Affirmed and Opinion filed May 13, 2008








Affirmed
and Opinion filed May 13, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NOS. 14-06-00795-CR,
14-06-00797-CR

____________

 

GEORGE MICHAEL BARGAS, JR. Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 177th
District Court

Harris County, Texas

Trial Court Cause Nos. 1045925,
1045924

 



 

O P I N I O N

Appellant George Michael Bargas, Jr. challenges his
convictions for two consolidated counts of aggravated sexual assault of a
child, asserting in ten issues legal and factual insufficiency and a host of
other complaints.  We affirm.

 

 

 








I.  Factual and Procedural
Background

The complainant, Tina,[1]
is appellant=s daughter, who lived with appellant when she was
between the ages of five and nine years old.  The father and daughter lived in
several different homes, residing first in a home in the Highlands and then
moving to Baytown when Tina was seven or eight years old.

Tina last saw appellant in the fall of 2003, before going
to live with her maternal grandmother, Gloria Wilson.  In May 2005, after
watching a video at school on sexual abuse, Tina told a classmate that Asomething had
happened to her.@  School officials met with Wilson and
explained that Tina needed counseling.  Though school officials did not
specifically mention sexual abuse, Wilson suspected that Tina=s bed-wetting,
cowering, and fear of the dark resulted from Tina=s having been
sexually abused.  To learn more from Tina, Wilson confronted Tina by telling
Tina that she knew Tina had been sexually abused; although, in reality, Wilson
knew nothing about any sexual abuse.  When Wilson asked if anyone had touched
Tina=s Aprivate parts,@ Tina responded
that appellant had touched her in those places.  Wilson tried to find out more
information, but Tina did not want to talk about it.  Wilson did not learn of
the details of Tina=s sexual abuse until later when she spoke
with Tina=s therapist, Priscilla Kleinpeter. 

After Wilson reported the sexual abuse, Child Protective
Services referred then ten-year-old Tina to the Children=s Advocacy Center,
where she was interviewed on videotape by forensic interviewer Shelly
Bohannon.  In that interview, Tina described the incidents of appellant=s sexual abuse in
specific detail. 








Sexual assault nurse examiner Danielle Livermore examined
Tina in the fall of 2005.  Though she could not determine when the abuse took
place and found no evidence of physical trauma, Livermore explained that the
absence of medical evidence in examinations of sexually abused child victims is
common.

Appellant was charged in two indictments with aggravated
sexual assault, and he pleaded Anot guilty@ to both
indictments.  The cases were consolidated for trial.  In her testimony at
trial, Tina identified incidents of appellant=s sexual abuse by
indicating which home she lived in with appellant at the time of the
incidents.  She described in detail how appellant first touched her Aprivate areas@ when she was five
years old in the Highlands home.  According to Tina, he touched her Afront private
parts@ with his hands
between ten and twenty times at that home.  Tina testified that more than
twenty times in the Highlands home, appellant put his Aprivate spot@ on her Aprivate spot@ as he got on top
of her, Ashaking up and
down@ with his Aprivate part@ and making Agrunting@ noises. 

When Tina was seven or eight years old, she and appellant
moved to Baytown.  One time, while living in Baytown, appellant came home from
drinking and touched Tina under her clothing in her Afront private area@[2] with his hands,
which hurt her.  In another Baytown incident, appellant came into Tina=s room and removed
her clothing and his clothing.  He Amoved his body up
and down@ behind her,
touching his sexual organ to her behind.  Describing an incident at another
person=s Baytown home,
Tina testified that appellant touched her Aprivate parts@ with his hand and
scratched her there with his jagged fingernail.  On that occasion, appellant
then put his Aprivate part@ in Tina=s mouth and moved
her head up and down; she vomited afterwards. 








Facts are disputed as to whether Tina saw appellant during
the summer of 2003, the time period in which the State (in the indictment)
alleged the offenses occurred.  Appellant testified that he had no contact with
Tina at that time because he had sent Tina to live with a relative, Josephine
Avalos, while appellant worked out of town over the summer.  Appellant=s long-time friend
and co-worker testified that appellant had no contact with Tina during that
summer.  Tina=s two cousins and paternal aunt testified that Tina
lived with them that summer, noting that Tina made an outcry statement about
sexual abuse by an AUncle Alex,@ who lived with
Avalos; however, the cousins and aunt indicated that Tina had no contact with
appellant.  Tina recalled living with the cousins at some point and testified
that her paternal aunt took her to and from appellant=s home.  Tina
indicated that she later lived with maternal aunt Joann Hernandez for part of
the summer.  Tina testified that she could have lived with Avalos at some point
in the springtime, but Tina did not recall a person named Alex or alleging he
had abused her.  Hernandez testified that Tina came to live with her in April 2003,
and later that fall she typically dropped Tina off at appellant=s home in Baytown
before school and picked Tina up after school.

At trial, the State introduced outcry witness Bohannon,
Tina=s therapist
Kleinpeter, and Baytown Police Department investigating officer Detective D. A.
Harrison.  Livermore testified as to the results of Tina=s medical
examination.  Alice,[3]
the fourteen-year-old daughter of appellant=s former live-in
girlfriend, provided extraneous-offense testimony that appellant twice had
touched her chest and rubbed her stomach when she lived with appellant in the
Highlands home.  Appellant presented testimony from Tina=s two cousins and
aunt, and appellant testified in his own defense.

A jury found appellant guilty of both counts of aggravated
sexual assault of a child and assessed punishment at sixty years= confinement for
each offense, with the sentences to run consecutively.

 

 








II.  Issues and Analysis

A.      Is the
evidence legally and factually sufficient to support the convictions?

In two issues, appellant challenges the sufficiency of the
evidence supporting his convictions.[4] 
Appellant first contends the trial court erred in denying his motions for
instructed verdicts because the State failed to produce evidence of every
element of the offenses, specifically the element of digital penetration. 
Appellant contends that by improperly denying his motions, the burden of proof
shifted from the State to appellant to prove his innocence, which is why he
testified on his own behalf.  Appellant also argues the evidence is factually
insufficient because no medical evidence and no other witnesses support the
allegations.  Appellant complains that Tina=s testimony is
unreliable because she used unsophisticated terminology for genitalia and
sexual acts, and she could not recall where she lived that summer, or anyone
named Alex, or making outcry against Alex when appellant presented contrary
evidence.








A challenge of the trial court=s denial of a
motion for instructed verdict is a challenge to the legal sufficiency of the
evidence to support the conviction.  See Williams v. State, 937 S.W.2d
479, 482 (Tex. Crim. App. 1996).  When evaluating a challenge to the legal sufficiency of the
evidence,
we view the evidence in the light most favorable to the verdict.  Wesbrook
v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).  The issue on appeal
is not whether we, as a court, believe the State=s evidence or
believe that appellant=s evidence outweighs the State=s evidence.  Wicker
v. State, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984).  The verdict may not
be overturned unless it is irrational or unsupported by proof beyond a
reasonable doubt.  Matson v. State, 819 S.W.2d 839, 846 (Tex. Crim. App.
1991).  The jury, as the trier of fact, Ais the sole judge
of the credibility of the witnesses and of the strength of the evidence.@  Fuentes v.
State, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999).  The jury may choose to believe or
disbelieve any portion of the witnesses= testimony.  Sharp
v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).  When faced with
conflicting evidence, we presume the trier of fact resolved conflicts in favor
of the prevailing party.  Turro v. State, 867 S.W.2d 43, 47 (Tex. Crim.
App. 1993).  Therefore, if any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt, we must affirm.  McDuff
v. State, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

In
contrast, when evaluating a challenge to the factual sufficiency of the
evidence, we view all the evidence in a neutral light and inquire whether we
are able to say, with some objective basis in the record, that a conviction is Aclearly wrong@ or Amanifestly unjust@ because the great weight and
preponderance of the evidence contradicts the jury=s verdict.  Watson v. State,
204 S.W.3d 404, 414B17 (Tex. Crim. App. 2006).  It is not enough that this court
harbor a subjective level of reasonable doubt to overturn a conviction that is
founded on legally sufficient evidence, and this court cannot declare that a
conflict in the evidence justifies a new trial simply because it disagrees with
the jury=s resolution of that conflict.  Id.
at 417.  If this court determines the evidence is factually insufficient, it
must explain in exactly what way it perceives the conflicting evidence greatly
to preponderate against conviction.  Id. at 414B17.  The reviewing court=s evaluation should not intrude upon
the fact finder=s role as the sole judge of the weight and credibility given
to any witness=s testimony.  See Fuentes, 991 S.W.2d at 271.  In conducting a
factual‑sufficiency review, we discuss the evidence appellant claims is
most important in allegedly undermining the jury=s verdict.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).








A person commits the offense of aggravated sexual assault
if the person intentionally or knowingly (1) causes penetration of the female
sexual organ of a child younger than fourteen years of age, and (2) causes the
sexual organ of a child younger than fourteen years of age to contact the
person=s sexual organ. See
Tex. Penal Code Ann. ''
22.021(a)(1)(B)(iii), (2)(B), 22.011(c)(1), (2) (Vernon Supp. 2002).  One
indictment alleged that, on or about July 15, 2003, appellant knowingly and
intentionally caused the penetration of Tina=s female sexual
organ with his finger.  The other indictment alleged that, on or about July 15,
2003, appellant knowingly and intentionally caused Tina=s sexual organ to
contact appellant=s sexual organ.  The Aon or about@ language in the
indictments permits the State to prove the offenses occurred on any date that
is prior to presentment of the indictment and within the statutory limitations
period.  Garcia v. State, 981 S.W.2d 683, 685B86 (Tex. Crim.
App. 1998).  An indictment with this language gives a defendant notice that he
must be prepared to defend against the alleged act of criminal misconduct
within the applicable statute of limitations.  See id. at 686.  As
evidence contrary to the verdict, appellant cites conflicting testimony about
where Tina lived that summer and Tina=s tendency to
identify dates of abuse by referencing which home she lived in at the time. 
Although appellant presented testimony that he did not live with Tina that
summer, the State offered contrary evidence through Hernandez and Tina, despite
her inability to pinpoint exact dates.  We presume the jury, when faced
with conflicting evidence, resolved conflicts in favor of the prevailing party.
 Turro, 867 S.W.2d at 47.  The jury, as a rational trier of fact, could
have determined beyond a reasonable doubt that the State proved the offenses
had occurred on a date prior to presentment of the indictment and within the
statutory limitations period.  Therefore, we find no merit in appellant=s
legal-sufficiency challenge.  See McDuff, 939 S.W.2d at 614. 








Additionally, Tina=s testimony alone
is sufficient to support the convictions for aggravated sexual assault.  See
Tex. Code Crim. Proc. Ann.
art. 38.07 (Vernon 2005); Villalon v. State, 791 S.W.2d 130, 134 (Tex.
Crim. App. 1990) (concluding child victim=s unsophisticated
terminology alone established element of penetration beyond a reasonable
doubt); Satterwhite v. State, 499 S.W.2d 314, 315 (Tex. Crim. App. 1973)
(holding unsophisticated testimony that appellant placed Ahis male organ
into her private parts@ was sufficient to sustain conviction); Jensen
v. State, 66 S.W.3d 528, 534 (Tex. App.CHouston [14th
Dist.] 2002, pet. ref=d).  The record reflects that Tina gave
detailed descriptions of several incidents in Baytown involving appellant=s hands and sexual
organ, penetration, and sexual contact.  Tina indicated on anatomically correct
dolls the Aprivate parts,@ Abehind,@ and Achest@ to support her
statements regarding appellant=s actions.  She identified the dates of
abuse by naming which home she lived in with appellant at the time of the
incidents.  Despite her unsophisticated terminology and rough time-frame of the
events, Tina=s detailed account of the sexual abuse, even if
unsupported by any other evidence, would be sufficient to support appellant=s convictions for
aggravated sexual assault.  See Tex.
Code Crim. Proc. Ann. art. 38.07; Villalon, 791 S.W.2d at 134; Satterwhite,
499 S.W.2d at 315; Jensen, 66 S.W.3d at 534.  Furthermore, Tina=s outcry testimony
retains probative value even if other evidence contradicts the outcry
statement, especially in light of additional evidence from other witnesses,
such as Bohannon and Kleinpeter, that tends to corroborate Tina=s testimony.  See
Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) (holding that
outcry evidence, even if contradicted at trial, retains probative value
sufficient enough to prove an essential element of indecency with a child). 
The jury, as the trier of fact, Ais the sole judge
of the credibility of the witnesses and of the strength of the evidence,@ and the jury may
choose to believe or disbelieve any portion of the witnesses= testimony.  Fuentes, 991 S.W.2d at 271; Sharp,
707 S.W.2d at 614.  Moreover, physical evidence is not required when, as in
this case, the complainant provides ample testimony to establish that a sexual
assault occurred.  Garcia v. State, 563 S.W.2d 925, 928 (Tex. Crim. App.
1978); Tinker v. State, 148 S.W.3d 666, 669 (Tex. App.CHouston [14th
Dist.] 2004, no pet.). 













The jury heard Tina=s testimony and
weighed Tina=s imperfect perception of time[5]
as to when the abuse occurred, Tina=s use of
unsophisticated terminology,[6]
and her alleged inability to recall making an outcry of abuse by AAlex.@  Because Tina
provided detailed testimony sufficient to establish that appellant committed
aggravated sexual assaults against her, medical evidence is not required.  See
Tinker, 148 S.W.3d at 669.  To the extent that Tina=s testimony
contradicts that of appellant=s, the jury, as trier of fact, held the
ultimate authority to weigh the credibility of the witnesses and the
testimony.  Tex. Code Crim. Proc. Ann.
art. 38.04 (Vernon 1979); Burks v. State, 876 S.W.2d 877, 909 (Tex.
Crim. App. 1994).  The jury judged the credibility of the witnesses and
reconciled conflicts in the testimony, and could have accepted or rejected any
or all of the evidence on either side.  See Fuentes, 991 S.W.2d at 271; Sharp,
707 S.W.2d at 614.  In a legal-sufficiency review, any inconsistencies in the
testimony should be resolved in favor of the jury=s verdict.  Johnson
v. State, 815 S.W.2d 707, 712 (Tex. Crim. App. 1991).  When viewed in the
light most favorable to the verdict, the jury, as a rational trier of fact,
could have determined that the essential elements of the offenses were met
beyond reasonable doubt.  See McDuff, 939 S.W.2d at 614.  Thus,
the trial court was correct to deny appellant=s request for an
instructed verdict.  See Rangel v. State, 199 S.W.3d 523, 538 (Tex. App.CFort Worth 2006,
no pet.).  When viewed in a neutral light, we cannot say, with some objective basis in the record, that
appellant=s convictions are Aclearly wrong@ or Amanifestly unjust@ because the great weight and
preponderance of the evidence contradicts the jury=s verdict. See Watson, 204
S.W.3d at   414B17.

The evidence presented is legally and factually sufficient
to support appellant=s convictions for aggravated sexual
assault.[7] 
See Watson, 204 S.W.3d at 414B17; McDuff, 939 S.W.2d at 614; Villalon,
791 S.W.2d at 134.  Accordingly, we overrule appellant=s third and
seventh issues.

B.      Did the trial court abuse
its discretion in admitting extraneous-offense evidence?

In his fifth issue, appellant complains that the trial court
erred in admitting extraneous-offense evidence that appellant sexually
assaulted Alice, his former live-in girlfriend=s
fourteen-year-old daughter.  Appellant argues that this ruling was in violation
of Texas Rules of Evidence 404(b) and 403.  See Tex. R. Evid. 403 (stating trial court may exclude relevant
evidence if its probative value is substantially outweighed by the danger of
unfair prejudice); Tex. R. Evid.
404(b) (stating evidence of other crimes, wrongs, or acts may be admissible for
some purposes). A trial court=s ruling on the admissibility of evidence
is reviewed under an abuse-of-discretion standard.  Moses v. State, 105
S.W.3d 622, 627 (Tex. Crim. App. 2003).  If the trial court=s ruling was
within the zone of reasonable disagreement, there is no abuse of discretion.  Id.


1.       Texas
Rule of Evidence 404(b)








Extraneous-offense evidence of other crimes, wrongs, or
acts may not be admitted in order to show that the defendant acted in
conformity with bad character.  Tex. R.
Evid. 404(b).  Extraneous-offense evidence, if relevant apart from
proving character conformity, may be admitted for other purposes including
proving motive, opportunity, intent, preparation, plan, knowledge, identity,
absence of mistake, or accident.  Tex.
R. Evid. 404(b); Moses, 105 S.W.3d at 626.  Though evidence of
other crimes, wrongs, or acts may have a tendency to show character conformity,
extraneous-offense evidence that has relevance apart from character conformity,
such as for rebuttal of a defensive theory, may be admissible.  See Tex. R. Evid. 404(b); Moses, 105
S.W.3d at 626 n.4, 628; Powell v. State, 63 S.W.3d 435, 438B39 (Tex. Crim.
App. 2001); Montgomery v. State, 810 S.W.2d 372, 387B88 (Tex. Crim.
App. 1990) (op. on reh=g).








The Texas Court of Criminal Appeals has held that
extraneous-offense evidence, under Rule 404(b), is admissible to rebut a
defensive theory raised in an opening statement or raised by the State=s witnesses during
cross-examination, as in this case.  See Ransom v. State, 920 S.W.2d
288, 301 (Tex. Crim. App. 1994) (op. on reh=g) (concluding
trial court did not err in admitting evidence to rebut defensive theory raised
on cross-examination of State=s witnesses); Powell, 63 S.W.3d at
439 (concluding trial court did not err in admitting evidence to rebut
defensive theories raised in opening statement).  However, the fact that the
State=s witnesses were
cross-examined does not, in and of itself, authorize the introduction of
extraneous-offense evidence.  Caldwell v. State, 477 S.W.2d 877,
879 (Tex. Crim. App. 1972); Webb v. State, 36 S.W.3d 164, 181 n.9 (Tex.
App.CHouston [14th
Dist.] 2000, pet. ref=d) (en banc); Bass v. State, 222 S.W.3d 571, 576, 578 (Tex.
App.CHouston [14th
Dist.] 2007, pet. granted); Patterson v. State, No. 05-06-00808-CR, 2007
WL 4200998, at *13 (Tex. App.CDallas Nov. 29, 2007, no pet. h.) (not
designated for publication).  A challenge to the complainant=s credibility on
cross-examination does not automatically open the door to extraneous-offense
evidence.[8] 
See Caldwell, 477 S.W.2d at 879; DeLeon v. State, 77
S.W.3d 300, 314 (Tex. App.CAustin 2001, pet. ref=d).  Rather, the
responses elicited from the State=s witnesses on
cross-examination, must be sufficient to construct a defensive theory before
the State may introduce extraneous-offense evidence in rebuttal.  Walker v.
State, 588 S.W.2d 920, 922B23 (Tex. Crim. App. 1979); DeLeon,
77 S.W.3d at 314.  To raise a defensive theory sufficient to open the door to
the introduction of the extraneous-offense evidence, the cross-examination
responses must undermine the State=s testimony and
effectively place in controversy a fact that testimony was offered to prove.  See
Crank v. State, 761 S.W.2d 328, 341 (Tex. Crim. App. 1988), overruled on
other grounds, Alford v. State, 866 S.W.2d 619, 624 n.8 (Tex. Crim.
App. 1993); Clark v. State, 726 S.W.2d 120, 122 (Tex. Crim. App. 1986);
Albrecht v. State, 486 S.W.2d 97, 102 (Tex. Crim. App. 1972); see also
Rankin v. State, 974 S.W.2d 707, 709 (Tex. Crim. App. 1996) (requiring
extraneous offense to be relevant to a Afact of
consequence@); Webb, 36 S.W.3d at 180.  In Bass v. State,
this court held that a fabrication defensive theory, without other legitimate,
permissible 404(b) purposes, is not sufficient to permit the introduction of
extraneous-offense evidence in rebuttal.  222 S.W.3d at 578 (Tex. App.CHouston [14th
Dist.] 2007, pet. granted); accord Dennis v. State, 178 S.W.3d
172, 178 n.1 (Tex. App.CHouston [1st Dist.] 2005, pet. ref=d) (indicating
that, to construct a defensive theory in cross-examination that implicates a
defensive theory beyond mere fabrication, an accused should offer not just a
motive, but evidence of a reason to lie).








In sexual-assault cases, extraneous-offense evidence may be
admitted under Rule 404(b) to rebut defensive theories of retaliation or that
the defendant is an innocent victim of a Aframe-up.@  See Wheeler
v. State, 67 S.W.3d 879, 887 n.22 (Tex. Crim. App. 2002) (admitting
extraneous-offense evidence to rebut defensive theory of a frame-up when
extraneous misconduct is similar to the charged offense and when the witness
lacked motive to lie); Moses, 105 S.W.3d at 626, 627 (permitting
evidence of extraneous offenses to rebut a retaliation defense).  This court in Bass v. State
examined the differences among fabrication, a frame-up theory, and a
retaliation theory.  222 S.W.3d at 576B77.  The Bass court stated
that, in a fabrication theory, the defendant contends only that the complainant
is making up the allegations.  See id.  The Bass court stated
that, though both frame-up and retaliation involve an element of fabrication, a
frame-up theory suggests conspiracy against a defendant that is motivated by
money or revenge, while retaliation involves a defendant=s assertion that Aa party did something in retaliation
for an action.@[9]  Id.; see Wheeler, 67
S.W.3d at 887 (involving defensive theory of Aconspiracy or frame-up motivated by
greed@ or money); Moses, 105 S.W.3d
at 627 (involving a retaliation defensive theory); see also Dennis, 178 S.W.3d at 178 (involving a frame-up defensive
theory motivated by anger or revenge); Blackwell v. State, 193 S.W.3d 1,
12 (Tex. App.CHouston [1st Dist.] 2006, pet. ref=d) (involving a frame-up defensive
theory motivated by Abad blood@ among family members); Townsend v. State, 776 S.W.2d
316, 318 (Tex. App.CHouston [1st Dist.] 1989, writ ref=d) (involving a defensive theory
motivated by complainant=s anger). 








By his cross-examination of both Tina and Kleinpeter, appellant
sought to establish a defensive theory that Tina=s allegations were
fabricated and based on the premise that she no longer wanted to live with
appellant=s physical abuse and temper.[10] 
See Townsend, 776 S.W.2d at 318 (involving extraneous-offense evidence
to rebut a defensive theory that the complainants fabricated sexual-abuse
allegations out of anger because appellant did not take them on a trip); see
also Dennis, 178 S.W.3d at 178 (involving a frame-up defensive theory that
the allegations were fabricated because the complainant was angry for being
disciplined).  Through his cross-examination of Tina, appellant connected Tina=s allegations to
specific acts of punishment imposed by appellant in the form of physical abuse
or household chores.  See Patterson, 2007 WL 4200998, at *13; DeLeon,
77 S.W.3d at 314.  Appellant offered both a motive for Tina to fabricate the
allegations and evidence, through Tina=s and Kleinpeter=s testimony, of
Tina=s reason to lie,
i.e. Tina was upset about living with appellant=s temper and
physical abuse.  See Dennis, 178 S.W.3d at 178 n.1; Townsend, 776
S.W.2d at 318.  Appellant did more than merely impeach Tina=s credibility;
through the responses elicited from Tina and Kleinpeter during
cross-examination, appellant opened the door to extraneous-offense evidence to
rebut appellant=s defensive theory of retaliation .  See
Dennis, 178 S.W.3d at 178 n.1; see also Walker, 588 S.W.2d at
922; DeLeon, 77 S.W.3d at 314; Townsend, 776 S.W.2d at 318. 

The State requested, outside of the jury=s presence, that
Alice=s testimony be
admitted for the Rule 404(b) purpose of rebutting appellant=s defensive theory
raised in appellant=s cross-examination of TinaCthat she
fabricated the allegations to retaliate against appellant=s physical abuse
and to avoid living with him.  The trial court allowed Alice=s
extraneous-offense testimony in light of this cross-examination, specifically
finding that the probative value of the evidence outweighed the prejudicial
effect.  The State then elicited testimony from Alice that on two prior
occasions, while Alice was a pre-teen and living in the same home as appellant,
appellant twice touched her chest and rubbed her stomach in bed, which made her
feel Aweird.@








The Court of Criminal Appeals has held that a trial court
does not abuse its discretion in admitting extraneous-offense evidence to rebut
retaliation when raised as a defensive theory.  Moses, 105 S.W.3d at
627; see Bass, 222 S.W.3d at 577.  The record reflects Tina=s responses to
appellant=s cross-examination plausibly fit within a defensive
theory of retaliation in that Tina could have fabricated the allegations to
retaliate against appellant for his physical abuse and to avoid returning to
appellant=s care.  See Moses, 105 S.W.3d at
627; Townsend, 776 S.W.2d at 318.  Appellant=s
cross-examination of Kleinpeter elicited essentially the same information that
Tina did not want to live with appellant because of his physical abuse.  The
State raised the defensive theory of retaliation as a permissible 404(b)
purpose for which to present Alice=s relevant
extraneous-offense evidence, and the trial court granted the State=s request Ain light of
defense=s cross [examination].@  See Moses,
105 S.W.3d at 627; Ransom, 920 S.W.2d at 301.  Under Moses,
the trial court did not abuse its discretion in determining Alice=s
extraneous-offense testimony was relevant rebuttal evidence to show that Tina
was not motivated by retaliation in making the sexual-abuse allegations against
appellant.  See Moses, 105 S.W.3d at 627. 

2.       Texas
Rule of Evidence 403

Even if relevant evidence is offered and admissible under
Rule 404(b), a trial court nonetheless should exclude it from evidence if the
probative value of the evidence is substantially outweighed by the danger of
unfair prejudice.  Tex. R. Evid.
403; Moses, 105 S.W.3d at 626; Montgomery, 810 S.W.2d at 387. 
Courts should balance the following factors under a Rule 403 analysis:  (1) the
strength of the evidence in making a fact more or less probable, (2) the
potential of the extraneous-offense evidence to impress the jury in some irrational
but indelible way, (3) the amount of time the proponent needed to develop the
evidence, and (4) the strength of the proponent=s need for this
evidence to prove a fact of consequence.  Mozon v. State, 991 S.W.2d
841, 847 (Tex. Crim. App. 1999).  When, as in this case, the record is silent
as to the trial court=s balancing of these factors, we presume
the trial court conducted the balancing test.  See Williams v. State,
958 S.W.2d 186, 195B96 (Tex. Crim. App. 1997).








The first of the factors, the strength of the evidence to
make a fact of consequence more or less probable, weighs strongly in favor of
admissibility.  The extraneous-offense evidence was probative to rebut
appellant=s theory that Tina=s allegations were
fabricated in retaliation for appellant=s abuse.  See
Wheeler, 67 S.W.3d at 888.  Alice=s testimony
contains similarities to Tina=s testimony in that both involve appellant
sexually touching a pre-teen girl living in the same residence as appellant at
the time of the touching.  See Dennis, 178 S.W.3d at 181.  Alice=s testimony, that
appellant touched another girl in a similar manner, undermines appellant=s theory that Tina
fabricated the allegations against him as retaliation.  See id.  Because
Alice=s
extraneous-offense testimony rebuts appellant=s defensive theory
of retaliation, the admission of this evidence makes it less likely Tina=s allegations are
the result of retaliation.  This evidence also makes the fact of consequence,
that Tina fabricated the allegations out of retaliation, less probable in that
appellant had similarly touched other pre-teen girls who lived in his home who
ostensibly had no reason to fabricate allegations of sexual abuse as a means of
retaliation.  See Wheeler, 67 S.W.3d at 888; Dennis, 178 S.W.3d
at 181.

As to the second and third factors, though danger lurks in
impressing the jury in an indelible way and Alice=s testimony is
prejudicial and carries some emotional weight, any unfair prejudice is not
outweighed by the probative value.  See Dennis, 178 S.W.3d at 181.  The
State spent minimal time developing Alice=s testimony, and
it was neither lengthy nor graphic; it is not likely that the jury was
impressed in some irrational or indelible way.  See id. Therefore, the
second and third factors weigh in favor of admissibility.

The fourth factor, requiring balancing of the State=s need for such
extraneous-offense evidence, is significant.  Tina did not tell anyone about
her allegations until almost a year and a half after she claimed the abuse
occurred, there was no physical evidence, and no other witnesses could support
her testimony.  Because appellant strongly contested Tina=s allegations on a
theory of retaliation, the State demonstrated the need to counter appellant=s theory that Tina
fabricated the allegations in order to avoid living with appellant.  See id.
 As such, this factor weighs heavily in favor of admissibility.








A trial court=s 403 ruling on
admitting extraneous-offense evidence must be upheld so long as it is Awithin the zone of
reasonable disagreement.@  Montgomery, 810 S.W.2d at 391. 
The trial court admitted Alice=s extraneous-offense testimony on the
basis that her testimony holds probative value that outweighs any prejudicial
effect.  See Tex. R. Evid.
403.  In balancing the above factors in the instant case, the trial court=s ruling that any
unfair prejudice from Alice=s extraneous-offense testimony does not
outweigh its probative value is within the zone of reasonable disagreement.  See
Williams, 958 S.W.2d at 195B96; Moses, 105 S.W.3d at 626.  We
conclude the trial court did not abuse its discretion under Rule 403 in
admitting the extraneous-offense evidence.  See Moses, 105 S.W.3d at
627.  We overrule appellant=s fifth issue.

C.      Did the trial court abuse
its discretion in admitting or limiting witness testimony?

In three issues, appellant contends the trial court abused
its discretion in permitting certain testimony from three witnesses: (1) outcry
witness Bohannon, (2) therapist Kleinpeter, and (3) Detective Harrison.  In a
fourth issue, appellant complains the trial court abused its discretion in
limiting appellant=s direct examination of witnesses
concerning Tina=s prior inconsistent outcry statements. 
We review a trial court=s decision to admit or exclude evidence
for an-abuse of discretion.  Mozon, 991 S.W.2d at 846B47; Moses,
105 S.W.3d at 627.  As previously noted, if the trial court=s ruling was
within the zone of reasonable disagreement, we must affirm.  Montgomery,
810 S.W.2d at 391. 

1.       Did the trial court abuse
its discretion in designating the proper outcry witness under article 38.072 of
the Texas Code of Criminal Procedure?








In his first issue, appellant claims reversible error and
harm in the trial court=s admission of Tina=s outcry testimony
through Bohannon because, appellant asserts, Bohannon was an improper outcry
witness.  Appellant complains Wilson is the proper outcry witness, because
Wilson was the first to hear Tina report the abuse when Wilson tricked Tina
into revealing that appellant had sexually assaulted her.  By not offering
Wilson as the proper outcry witness, appellant claims, the trial court denied
his right to confrontation under the Sixth Amendment of the United States
Constitution.  A trial court=s designation of an outcry witness will be
upheld when supported by the evidence.  Garcia v. State, 792 S.W.2d 88,
92 (Tex. Crim. App. 1990). 

Under article 38.072 of the Texas Code of Criminal
Procedure, some hearsay statements are admissible in prosecuting certain
offenses, including aggravated sexual assault of a child, as in this case.  Tex. Code Crim. Proc. Ann. art. 38.072,
' 1 (Vernon Supp.
2005).  This statute applies to Astatements that
describe the alleged offense@ and that A(1) were made by
the child against whom the offense was allegedly committed and (2) were made to
the first person, eighteen years of age or older, other than the defendant, to
whom the child made a statement about the offense.@  Id. ' 2(a)(1), (2). 
The Court of Criminal Appeals has construed the statute to apply to the first
adult to whom the complainant makes a statement that Ain some
discernible manner describes the alleged offense.@  Garcia,
792 S.W.2d at 91.  To invoke the statute, the statements must be more than
words that Agive a general allusion@ that something in
the area of child abuse has occurred.  Id.

Although appellant contends Wilson is the proper outcry
witness, the record reflects that Tina did not describe the alleged offense to
Wilson.  See id.  Rather, Wilson learned of the specific details of Tina=s sexual abuse
from Tina=s therapist, Kleinpeter.  Tina=s statements to
Wilson were no more than a general allusion that abuse had occurred.  See
id.  Such general allusions, in which the complainant does not describe the
abuse in a discernible manner, are not within the purview of article 38.072.  See
Tex. Code Crim. Proc. Ann.
art. 38.072; Garcia, 792 S.W.2d at 91.  








Bohannon testified as to Tina=s detailed
description of appellant=s contact with and penetration of Tina=s Aprivate areas.@  In the videotaped
interview, Tina describes the abuse in detail to Bohannon by pointing to
anatomical diagrams of a male and female body and describing how, when, and
where the incidents occurred.  According to the record, Bohannon was the first
person over eighteen years of age to whom Tina in some discernible manner
described the alleged offense.  See Tex.
Code Crim. Proc. Ann. art. 38.072; Garcia, 792 S.W.2d at 91. 
Bohannon testified Wilson could not provide information about any abuse beyond
a general allegation.  Tina=s account of the abuse as relayed to
Bohannon was more than a general allusion that child abuse had occurred; her
statements contained sufficient information about the nature of the acts and
the perpetrator to meet the requirements of article 38.072 regarding the proper
outcry witness.  See Tex. Code
Crim. Proc. Ann. art. 38.072; Garcia, 792 S.W.2d at 91; Reed
v. State, 974 S.W.2d 838, 841 (Tex. App.CSan Antonio 1998,
pet. ref=d); Hayden v.
State, 928 S.W.2d 229, 231 (Tex. App.CHouston [14th
Dist.] 1996, pet. ref=d); Schuster v. State, 852
S.W.2d 766, 768 (Tex. App.CFort Worth 1993, pet. ref=d) (holding
psychologist was proper outcry witness even though complainant told mother
first, but child was so upset that no details were provided).  We conclude the
trial court did not abuse its discretion in determining that Bohannon was the
proper outcry witness.  See Tex.
Code Crim. Proc. Ann. art. 38.072; Garcia, 792 S.W.2d at
92. 

Appellant complains the State misled him into believing
Wilson was an outcry witness based on the State=s notice.  We need
not reach the merits of this argument because appellant failed to preserve
error by objecting at the outcry hearing.  See Tex. Code Crim. Pro. Ann. ' 38.072; Garcia
v. State, 907 S.W.2d 635, 637 (Tex. App.CCorpus Christi
1995), aff=d, 981 S.W.2d 683 (Tex. Crim. App.
1998).  Even if appellant had preserved error by voicing the complaint he now
raises on appeal, he would have suffered no prejudice.  See Brown v State,
756 S.W.2d 793, 797 (Tex. App.CHouston [14th Dist.] 1988, pet. ref=d).  The purpose
of requiring notice is to prevent the accused from being surprised by the
introduction of outcry testimony.  See id.  In this case, the record
reflects the State identified both Wilson and Bohannon as potential outcry
witnesses and the record is devoid of any evidence of surprise.  See id.








Appellant=s claim that he was unconstitutionally
denied his Sixth Amendment right to confront and cross-examine his accusers
because the State proffered Bohannon=s outcry
testimony, rather than Wilson=s, is waived because he failed to preserve
the complaint for review.  See Tex.
R. App. P. 33.1(a)(1)(A) (requiring a trial court objection to comport
with objection on appeal); Reyna v. State, 168 S.W.3d 173, 179 (Tex.
Crim. App. 2005); Gregory v. State, 56 S.W.3d 164, 177 (Tex. App.CHouston [14th
Dist.] 2001, pet. dism=d).  Though appellant objected to Bohannon
as an outcry witness, he failed to voice any objection under the Confrontation
Clause, and, therefore, waived this argument.  See id.  

Finally, appellant contends Tina=s school officials
are the proper outcry witnesses, alleging that the State Amade no effort to
ascertain whether any of the nuns or school employees were the proper >outcry= witnesses.@  The record is
silent as to whether school personnel were interviewed, and the State did not
identify school personnel as outcry witnesses in the State=s notice.  Tina
testified that she first confided in a classmate, who presumably is under the
age of eighteen, and, therefore, not a qualified outcry witness under article
38.072.  See Tex. Code Crim.
Proc. Ann. art. 38.072.  Additionally, the record reflects school
officials did not divulge the nature of their concerns to Wilson, which
suggests that they were not aware of more than a general allusion that child
abuse had occurred.  See Garcia, 792 S.W.2d at 91.  If the school
personnel had only a general notion as to the nature of the abuse, they are not
proper outcry witnesses under article 38.072.  See Tex. Code Crim. Proc. Ann. art. 38.072;
Garcia, 792 S.W.2d at 90B91.  We overrule appellant=s first issue.

2.       Did the trial court abuse
its discretion by permitting the complainant=s therapist to testify concerning
the complainant=s hearsay statements made in
therapy?








In his second issue, appellant complains that the trial
court erred in permitting Tina=s therapist, Kleinpeter, to testify as to
hearsay statements Tina made during therapy under Texas Rule of Evidence
803(4).  See Tex. R. Evid.
803(4) (allowing admission of hearsay statements made for the purpose of
obtaining a diagnosis and treatment).  Specifically, appellant contends
Kleinpeter is not qualified as a medical physician providing treatment to Tina
because depression, anxiety, sadness, and tearfulness, for which Kleinpeter
treated Tina, are common symptoms of a child whose life is unstable, and,
therefore, Tina=s statements in therapy with Kleinpeter
were not reasonably pertinent to a diagnosis or treatment.  Under the
abuse-of-discretion standard, a reviewing court will not reverse an 803(4)
evidentiary ruling as long as it falls within the zone of reasonable
disagreement.  Gregory, 56 S.W.3d at 183.

Under Rule 803(4), a trial court may allow admission of
hearsay statements describing sexual abuse that were made for the purpose of
facilitating medical diagnosis or treatment.  Tex.
R. Evid. 803(4); Gregory, 56 S.W.3d at 183.  A[I]f the statement
is made to another for the purpose of medical treatment, the person to whom the
statement is made does not necessarily have to be a >medical person.=@  Gohring v.
State, 967 S.W.2d 459, 461 (Tex. App.CBeaumont 1998, no
pet.); see Macias v. State, 776 S.W.2d 255, 259 (Tex. App.CSan Antonio 1989,
pet. ref=d). 
Non-physicians, such as licensed therapists like Kleinpeter, may testify under
the medical diagnosis and treatment exception.  See Tex. R. Evid. 803(4); Gregory,
56 S.W.3d at 183.  








All statements made in the context of counseling may well
be relevant to a diagnosis or treatment; however, to be admitted under Rule
803(4), the statements also must be pertinent to the diagnosis or treatment.  Moore
v. State, 82 S.W.3d 399, 413 (Tex. App.CAustin 2002, pet.
ref=d) (permitting
hearsay statements if Areasonably pertinent to diagnosis or
treatment@); Gregory, 56 S.W.3d at 183.  Therefore, to
satisfy Rule 803(4), any hearsay statements must be made for the purpose of and
be reasonably pertinent to medical diagnosis or treatment.  Moore, 82
S.W.3d at 413.  Statements regarding abuse made to a psychologist or therapist
are made for the purpose of medical diagnosis and treatment.  Macias,
776 S.W.2d at 259.  Because treatment of child abuse includes removing a child
from an abusive setting, the identity of the abuser is pertinent to the medical
treatment of the child.  Moore, 82 S.W.3d at 413.  Hearsay statements by
a suspected child victim of abuse regarding causation, source of abuse, or
describing abusive acts are admissible under Rule 803(4) as being pertinent to
the medical treatment of a victim.  Gregory, 56 S.W.3d at 183; Moore,
82 S.W.3d at 413. 

The trial court first noted that Kleinpeter is part of the
medical profession as a licensed marriage and family therapist.  Gregory,
56 S.W.3d at 183; Macias, 776 S.W.2d at 259.  The trial court permitted
Kleinpeter=s testimony regarding Tina=s statements of
abuse, but specifically limited Kleinpeter=s testimony to
recounting only those statements Tina made in the initial discussion of abuse
because such statements were necessary for properly diagnosing Tina and
developing a course of therapy.  Kleinpeter testified to her diagnosis and
treatment of Tina=s post-traumatic stress disorder. 
According to Kleinpeter, in Tina=s initial
discussion of sexual abuse, Tina described the sexual abuse as appellant
putting Ahis thing in her
front and back and in her mouth.@  Kleinpeter
testified that Tina, over the course of twenty-four sessions in fifteen months,
talked about appellant=s sexual abuse every three to four
sessions.  Kleinpeter=s testimony did not include other hearsay
statements.  Only on cross-examination, in response to appellant=s question about
the specific details of sexual abuse, did Kleinpeter recount Tina=s description of
one occasion of abuse with specific detail.  

Kleinpeter testified to Tina=s statements of
abuse at appellant=s hands in connection with Kleinpeter=s treatment of
Tina=s post-traumatic
stress disorder.  See Gohring, 967 S.W.2d at 461; Macias, 776
S.W.2d at 259.  Non-physicians, such as licensed therapists like Kleinpeter,
may testify to causation and source of abuse under the
medical-diagnosis-and-treatment hearsay exception.  See Tex. R. Evid. 803(4); Gregory,
56 S.W.3d at 183.  Tina=s statements regarding the sexual acts and
appellant=s identity were for the purpose of and pertinent to
Kleinpeter=s treatment and diagnosis of Tina.  See Macias,
776 S.W.2d at 259; Gregory, 56 S.W.3d at 183.  Thus, we conclude the
trial court did not abuse its discretion in permitting Kleinpeter=s testimony
regarding Tina=s hearsay statements made in the initial discussion of
abuse.  See Gohring, 967 S.W.2d at 461.








Even if the trial court had erred in admitting this
testimony, the error would be harmless because the same information was
properly admitted without appellant=s objection
through other witnesses.  See Brooks v. State, 990 S.W.2d 278, 287 (Tex.
Crim. App. 1999).  Given Bohannon=s substantially
similar testimony and Tina=s own detailed testimony, both admitted
without appellant=s objection, any error in admitting
Kleinpeter=s testimony of Tina=s hearsay
statements of abuse would be harmless.  See id.; Jones v. State,
111 S.W.3d 600, 604B05 (Tex. App.CDallas 2003, pet.
ref=d).  Accordingly,
we overrule appellant=s second issue.

3.       Did the trial court abuse its discretion
by permitting a law enforcement officer to testify as to the frequency of
normal results in medical examinations for child-abuse cases?

In his fourth issue, appellant complains the trial court
abused its discretion in permitting Detective Harrison to testify that medical
exams in child-abuse cases frequently yield normal results because the law
enforcement officer was not a qualified expert to discuss such medical results
in violation of Texas Rules of Evidence 701 and 702.  Appellant specifically
complains of the following exchange at trial:

[THE PROSECUTOR]: And based on your experience, how many Bspecifically in child abuse, how
many times after medical exams are done do you find normal findings, based on
your experience?

. . . 

[HARRISON]: It is common for me to find normal findings in my
investigations for medical results for child abuse.

 








A trial court=s ruling on
admissibility or exclusion of evidence will be upheld if the record reasonably
supports the ruling.  Fairow v. State, 943 S.W.2d 895, 901 (Tex. Crim.
App. 1997).    Under Rule 702, if a witness possesses scientific, technical, or
other specialized knowledge that will assist a fact finder, and if the witness
is qualified as an expert by knowledge, skill, experience, training, or
education, then that expert may testify with an opinion.  Tex. R. Evid. 702; Jensen, 66
S.W.3d at 542.  Under Rule 701, once personal knowledge is established, a
person, as a lay witness, may offer an opinion based on her perception to help
a fact finder understand testimony or determine a fact in issue.  See Tex. R. Evid. 701; Solomon v. State,
49 S.W.3d 356, 364 (Tex. Crim. App. 2001).  An officer=s personal
knowledge may come from past experiences.  See, e.g., Thomas v.
State, 916 S.W.2d 578, 580B81 (Tex. App.CSan Antonio 1996,
no pet.). 

Presuming without deciding that Detective Harrison was not
a proper witness to discuss the frequency of certain medical results in
child-abuse cases, the error was harmless because the same facts were
established by other admissible evidence introduced without objection.  See
Willis v. State, 785 S.W.2d 378, 383 (Tex. Crim. App. 1989).  The record
reflects that Livermore introduced the results from Tina=s medical
examination and explained that the absence of physical evidence of sexual abuse
is not unusual.  Therefore, even if the trial court erred in admitting
Detective Harrison=s testimony, the error was rendered
harmless with the introduction of Livermore=s testimony.  See
id.  Because error, if any, provides no basis for reversal, we overrule
appellant=s fourth issue.

4.       Did the
trial court abuse its discretion in limiting appellant=s direct
examination regarding the complainant=s prior
inconsistent statements?

In his sixth issue, appellant contends the trial court
erred in limiting the direct examination of witnesses regarding Tina=s prior
inconsistent statements in violation of Rules of Evidence 405(b) and 402.  See
Tex. R. Evid. 405(b) (stating
methods of proving character with specific instances of conduct in cases which
a person=s character or
trait is an essential element of the claim, charge, or defense); Tex. R. Evid. 402 (stating that
relevant evidence is generally admissible).  Through three defense witnesses,
appellant sought to inquire about a prior inconsistent statement Tina made in
the videotaped interview with Bohannon.  The statement appellant alleged was
inconsistent was Tina=s comment that appellant was the only
person who had ever touched her sexually.  We review a trial court=s ruling on the
admissibility of a prior inconsistent statement under an abuse-of-discretion
standard.  Lopez v. State, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002).








In a hearing conducted outside of the jury=s presence, three
defense witnesses, Tina=s two cousins, Samantha and Amanda, and
Tina=s paternal aunt
Joann Cantu (collectively Athe Cantus@) testified that
Tina told them details of alleged sexual abuse by Alex.  The trial court
admitted the testimony in light of Tina=s prior statement
in the video with Bohannon that appellant was the only person who had touched
her in a sexual manner.  However, the trial court limited appellant=s direct
examination of the Cantus to Tina=s statements that AUncle Alex@ Astuck his thing in
me@ and did not
permit further questioning concerning details of how the alleged sexual abuse
by Alex occurred.

To preserve a complaint for appellate review, a party must
make a timely request, objection, or motion with sufficient specificity to
apprise the trial court of the complaint.  Tex.
R. App. P. 33.1(a); Saldano v. State, 70 S.W.3d 873, 886B87 (Tex. Crim.
App. 2002).  Appellant has not cited and the record does not reveal that
appellant raised this Rule 405(b) issue in the trial court.  Because appellant
did not object at trial on the basis of Rule 405(b), he has waived his
complaint about the admissibility of the excluded evidence under Rule 405(b).  Johnson
v. State, 803 S.W.2d 272, 292 (Tex. Crim. App. 1990), overruled on
other grounds, Heitman v. State, 815 S.W.2d 681, 685 n.6 (Tex. Crim.
App. 1991).

Under Rule 402, appellant complains that the Cantus= testimony was
relevant, admissible testimony to rebut Tina=s prior statement
on the video and to support the following exchange during appellant=s
cross-examination of Tina:

[APPELLANT=S COUNSEL]:  And are you saying that George is the only person who ever
did anything to you?

[TINA]:  I think.

[APPELLANT=S COUNSEL]: You think.  But you=re not sure?

[TINA]:  Yes.

[APPELLANT=S COUNSEL]:  Is it possible that you=ve said that Alex has done bad things to you?

[TINA]:  I can=t remember that person.








[APPELLANT=S COUNSEL]:  Well, who is it that you think may have also done sexual things
to you?

[TINA]:  I don=t know. 

Moreover,
appellant argues that the probative value of the Cantus= testimony was not
outweighed by any danger of prejudice as the Cantus= testimony would
impeach Tina=s credibility regarding who abused her and offer an
alternative explanation for Tina=s allegations. 

Because appellant was offering the evidence rather than
attempting to exclude it, the only issue affecting admissibility is whether the
Cantus= testimony
regarding the alleged abuse by Alex was relevant.  See Tex. R. Evid. 401, 402; Cameron v. State, 241
S.W.3d 15, 20 (Tex. Crim. App. 2007).  Evidence is relevant if it has Aany tendency to
make the existence of any fact that is of consequence to the determination of
the action more probable or less probable than it would be without the
evidence.@  Tex. R. Evid.
401; Jensen, 66 S.W.3d at 539.  To be relevant, evidence must be both
material and probative.  Miller v. State, 36 S.W.3d 503, 507 (Tex. Crim.
App. 2001).  Evidence is material if it proves any fact of consequence to the
determination of the action.  Tex. R.
Evid. 401; Miller, 36 S.W.3d at 507.  Appellant also must
establish that the proffered testimony is probative as tending to make the
existence of a material fact more or less probable than it would be without the
evidence.  See Tex. R. Evid. 401;
Miller, 36 S.W.3d at 507.  The trial court did not abuse its discretion
by determining that details of alleged abuse by Alex were not relevant to the
determination of whether appellant sexually assaulted Tina, and that such
details did not tend to make the existence of a material fact, vis _ vis this case
concerning whether appellant sexually abused Tina, more or less probable.  See Tex. R. Evid. 401,
402; Miller, 36 S.W.3d at 507.  The trial court did not abuse its
discretion when it allowed the Cantus= testimony and
ruled that the details of any alleged previous abuse by Alex were not
relevant.  See Lopez, 86 S.W.3d at 231.  Therefore, we overrule
appellant=s sixth issue.

 








D.      Did the trial court err in
denying appellant=s requested changes to the jury
charge in both the guilt-innocence phase and the punishment phase of trial?

Appellant presents two issues regarding changes to the jury
charge in both phases of trial.  In analyzing a jury-charge issue, we first
determine if error occurred and, if so, we conduct a harm analysis.  Ngo v.
State, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).  The degree of
harm required for reversal depends on whether appellant has preserved error by
objection.  Id.  A jury-charge error requires reversal when, after
proper objection, the appellant suffers Asome harm@ to his rights.  Id.;
Almanza v. State, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985) (op. on reh=g), overruled
on other grounds, Rodriguez v. State, 758 S.W.2d 787, 788 (Tex.
Crim. App. 1988).  If appellant failed to object at trial and offered no
objections to the charge, charge error does not require reversal unless
appellant shows Aegregious harm.@  Almanza,
686 S.W.2d at 174. 

1.       Did the trial court err in
denying appellant=s request to change the jury charge
regarding extraneous-offense evidence in the guilt-innocence phase?

In the jury charge for the guilt-innocence phase, appellant
requested changes to clarify which child, Tina or Alice, and which offenses
were to be considered by the jury in assessing guilt.  Appellant requested that
one page of the instructions pertain to Tina=s charged
allegations so that Athe jury could have believed the other charged
offense constituted an extraneous offense and have considered that against the
appellant.@  Appellant sought changes to the instructions for
another page involving Rule 404(b) evidence to pertain to Aanyone other than
complainant,@ namely Alice.  Additionally, appellant alleges error
in the trial court=s denial of his request that the jury
could not consider Alice=s testimony at all on the basis that Alice=s testimony was
not admissible for any reason. 

The guilt-innocence charges, of which appellant complains,
contain article 38.37 language as promulgated in the Texas Code of Criminal
Procedure.  See Tex. Code Crim.
Proc. Ann. art. 38.37 (Vernon 2005).  Article 38.37 of the Texas Code of
Criminal Procedure provides:








Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of
other crimes, wrongs, or acts committed by the defendant against the child
complainant who is the victim of the alleged offense shall be admitted for its
bearing on all relevant matters, including: 

(1)     the state of mind of the defendant and the
child; and

(2)     the previous and subsequent relationship
between the defendant and the child.

Id. ' 2.  Section 4 of article 38.37 does not limit the
admissibility of evidence of extraneous crimes, wrongs, or acts under any other
applicable law.  Id. ' 4.  The guilt-innocence charges contain article 38.37 instructions as
set forth below:

You are further instructed that if there is any evidence
before you in this case regarding the defendant=s committing other crimes, wrongs, or acts against
the child who is the complainant of the alleged offense in the indictment in
this case, you cannot consider such evidence for any purpose unless you find
and believe beyond a reasonable doubt that the defendant committed such other
crimes, wrongs, or acts, against the child, if any, and even then you may only
consider the same in determining its bearing on relevant matters, including (1)
the state of mind of the defendant and the child; and (2) the previous and
subsequent relationship between the defendant and the child for no other
purpose.

Article 38.37 allows for the admission of other crimes,
wrongs, or acts to be admitted when relevant.  Phillips v. State,
193 S.W.3d 904, 911 (Tex. Crim. App. 2006).  The extraneous-offense evidence of
other incidents of sexual abuse involving Tina was relevant under article 38.37
to prove other matters including the state of mind of appellant and Tina and
the previous and subsequent relationship between the them.  See Tex. Code Crim. Proc. Ann. art. 38.37, ' 2.  The charge, including the 38.37
instruction, did not limit the jury=s consideration of
the extraneous evidence involving Tina because any extraneous offenses
involving Tina may have Abearing on relevant matters.@  See id.
 Because any extraneous-offense evidence involving Tina was relevant and
admissible for the purposes listed under 38.37, an instruction limiting the
jury=s consideration of
extraneous-offense evidence to only appellant=s charged conduct
with Tina would have improperly restrained the jury from considering such
evidence in violation of article 38.37.  See id.








As discussed above, Alice=s testimony was
admissible under Rules 404(b) and 403 to rebut appellant=s defensive theory
of retaliation.  See Moses, 105 S.W.3d at 627.  Therefore, appellant=s complaint that
Alice=s testimony could
not be considered at all lacks merit.  See Tex. Code Crim. Proc. Ann. art. 38.37, ' 4 (AThis article does
not limit the admissibility of evidence of extraneous crimes, wrongs, or acts
under any other applicable law.@).  Furthermore, an instruction limiting
the jury=s consideration of
extraneous-offense evidence only to that extraneous conduct between appellant
and Alice, as Aanyone other than the complainant,@ would have placed
an improper restraint on the jury in violation of article 38.37.  See id.
' 2 (permitting
extraneous-offense evidence involving complainant for relevant purposes).  We
hold the trial court did not err in denying appellant=s requested
changes regarding extraneous-offense evidence given the permissible purposes
under Rule 404(b) and article 38.37.  See Arline v. State, 721
S.W.2d 348, 351 (Tex. Crim. App. 1986) (requiring error to exist in the
charge). 

Even if the trial court had erred, there would be no basis
for reversal.  Given Alice=s testimony, the defensive theory of
retaliation, and Tina=s accounts of ongoing abuse, no harm
exists when viewed in light of the entire jury charge, the evidence, and the
record as a whole when any extraneous-offense evidence was properly admitted
under article 38.37.  See Bailey v. State, 867 S.W.2d 42, 43
(Tex. Crim. App. 1993); Almanza, 686 S.W.2d at 171.  Accordingly, we
overrule appellant=s eighth issue.

2.       Did the trial court err in
denying appellant=s request to advise the jury in the
jury charge of the trial court=s power to stack sentences in the punishment phase?








In his ninth issue, appellant complains the trial court abused
its discretion in the punishment phase in denying his request to advise the
jury of the trial court=s power to stack the sentences in each
case.  Under appellant=s theory, evidence at trial established
that the charged offenses arose from the same criminal episode, and because the
State filed a motion to cumulate, the trial court was required to charge the
jury fully and affirmatively on the applicable law.  According to appellant,
the trial court took the issue of punishment from the province of the jury in
violation of his constitutional and statutory rights, and appellant claims harm
in that the jury could have assessed a lower sentence on each case.

A trial court must charge the jury fully and affirmatively
on the law applicable to every issue raised by the evidence.  Tex. Code Crim. Proc. Ann. art. 36.14
(Vernon 2007); Taylor v. State, 856 S.W.2d 459, 470 (Tex. App.CHouston [1st
Dist.] 1993), aff=d, 885 S.W.2d 154
(Tex. Crim. App. 1994).  If evidence presented at trial raises an issue, and a
jury charge is requested on that issue, then a charge on that issue must be
given.  Taylor, 856 S.W.2d at 470.  

Presuming without deciding that error exists, the error is
harmless.  See Harvey v. State, 821 S.W.2d 389, 391 (Tex. App.CHouston [14th
Dist.] 1991, pet. ref=d).  Reversal is required for an error
that has been properly preserved only if Asome harm@ to the accused
results from the error or if the error is Acalculated to
injure the rights of the defendant.@  Id.; see Tex.
Code Crim. Proc. Ann. art. 36.19; Almanza, 686 S.W.2d at 171; Booker
v. State, 712 S.W.2d 853, 857 (Tex. App.CHouston [14th
Dist.] 1986, pet. ref=d).  In assessing harm, the reviewing
court considers the entire jury charge, the state of the evidence, the
arguments of counsel, and other relevant information as found in the record as
a whole.  Almanza, 686 S.W.2d at 171; Harvey, 821 S.W.2d at 391. 
When taken as a whole, the record reflects the jury was informed of the trial
court=s authority to
stack the sentences when, during deliberations, the jury sent a note to the
trial judge questioning whether the sentences would run concurrently or
consecutively.  In a written response, the trial judge offered, AIt is within the
court=s discretion
whether the sentences will run concurrently or consecutively.@  Based on the above
analysis, error, if any, by the trial court in its refusal to include an
instruction on its power to stack sentences does not require reversal.  See
Almanza, 686 S.W.2d at 171.  No actual harm is demonstrated in the
record.  See Harvey, 821 S.W.2d at 391.  Accordingly, we
overrule appellant=s ninth issue.








E.      Did the trial court err in
rendering inconsistent judgments, which subsequently resulted in improper
stacking of the sentences and violated appellant=s due process rights?

Appellant contends in his tenth issue that the trial court=s judgments are
inconsistent and, thus, render the stacking of the sentences improper and
unconstitutional as a violation of his due process rights.  Specifically,
appellant complains the judgments in his consolidated trial are inconsistent
because one judgment specifies that the sentences Ashall run
concurrently@ and the other judgment specifies that the sentences Ashall run
consecutively.@

With respect to appellant=s argument that
his due-process rights were violated by the inconsistent judgments and improper
stacking, appellant
provides no analysis or citations to the record or legal authorities.  To present an
issue for appellate review Athe brief must contain a clear and concise
argument for the contentions made, with appropriate citations to authorities
and to the record.@  Tex. R. App. P. 38.1(h).  Appellant has not addressed any of the
governing legal principles or applied them to the facts of this case.  See
King v. State, 17 S.W.3d 7, 23 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref=d).  Appellant=s brief contains
only a heading for his tenth issue indicating that stacking the sentences is
unconstitutional as a violation of due process, but statements which cite no
authority present nothing for appellate review.  Id.; see also Vuong
v. State, 830 S.W.2d 929, 940 (Tex. Crim. App. 1992).  Therefore, appellant has waived this
issue.  See Tex. R. App. P.
38.1(h);
King, 17 S.W.3d at 23; Vuong,
830 S.W.2d at 940. 








Under article 42.08 of the Code of Criminal Procedure, the
trial judge has the discretion to cumulate the sentences for two or more
convictions.  Tex. Code Crim. Proc. Ann.
art. 42.08(b) (Vernon 2006); Smith v. State, 575 S.W.2d 41, 41 (Tex.
Crim. App. 1979); Harvey, 821 S.W.2d at 392.  Cumulative sentencing is
permitted only as provided by statute.  Cook v. State, 824 S.W.2d 634,
641 (Tex. App.CDallas 1991, pet. ref=d) (per curiam). 
When a defendant has been convicted in two or more cases, the trial court has
discretion to order the judgment and sentence in the second conviction to
either (1) begin to run after the judgment and sentence imposed in the
preceding conviction ceased to operate, or (2) run concurrently with the
judgment and sentence imposed in the preceding conviction.  Tex. Code Crim. Proc. Ann. art.
42.08(a).  When the convictions arise out of the Asame criminal
episode@ and the cases are
tried together, the sentences must run concurrently unless, as in this case,
the convictions are for certain, specific offensesClike aggravated
sexual assault of a childCin which case the trial court may exercise
its discretion to cumulate or stack the sentences.  See Tex. Penal Code Ann. ' 3.03 (indicating
that sentences for convictions under Texas Penal Code '' 22.011 and 22.021
shall run concurrently or consecutively); Nicholas v. State, 56 S.W.3d
760, 765 (Tex. App.CHouston [14th Dist.] 2001, pet. ref=d).  We review the
trial court=s decision to stack or cumulate sentences for an abuse
of discretion.  Nicholas, 56 S.W.3d at 765.  So long as the law allows
the imposition of cumulative sentences, the trial judge has absolute discretion
to stack sentences.  Id. 








Appellant contends the sentences rendered in the judgments
are inconsistent.  The record contains two AMotions to
Cumulate@ and the
accompanying signed orders granting the motions.  The judgment for cause number
1045924 indicates that appellant, who is convicted of aggravated sexual assault
of a child, would be sentenced to confinement for a period of sixty years.  The
judgment for cause number 1045925 indicates that appellant would be sentenced
to confinement for a period of sixty years, which is a sentence that is to run
consecutively.  The judgment for Cause Number 1045925 is accompanied by a
special finding or order that the sentence will run consecutively and Ashall begin only
when the judgment and sentence in the following case has ceased to operate:
1045924.@  Furthermore, the
record indicates that the trial court orally pronounced that for Cause Number
1045924, appellant will Aserve 60 years in accordance with the laws
of the State of Texas, and that upon completion of that sentence, [appellant
will] then begin to serve 60 years in the Texas Department of Criminal Justice
Institutional Division@ as assessed for conviction in Cause
Number 1045925.  When there is a variation between the oral pronouncement and
the written memorialization of the sentence, the oral pronouncement controls.  Coffey
v. State, 979 S.W.2d 326, 328 (Tex. Crim. App. 1998).  In this case, the
cumulation order on the judgment for Cause Number 1045925 is consistent with
the trial court=s oral pronouncement of the sentence. 
Moreover, the cumulation order, along with the judgment in Cause Number 1045925
is Asufficiently
specific to allow the Texas Department of Criminal Justice-Institutional
Division . . . to identify the prior with which the newer conviction is
cumulated.@  Ex parte San Miguel, 973 S.W.2d 310, 311 (Tex.
Crim. App. 1998).  When, as in this case, the same court sentences the
defendant in both causes, the cumulation order is sufficient if it simply makes
reference to the previous cause number.  Hamm v. State, 513 S.W.2d 85,
86B87 (Tex. Crim.
App. 1974); Edwards v. State, 106 S.W.3d 833, 846 (Tex. App.CDallas 2003, pet.
ref=d); Faison v.
State, 59 S.W.3d 230, 238 (Tex. App.CTyler 2001, pet.
ref=d) (holding that
the cumulation order need not contain anything more than the cause number of
the previous conviction if the record contains evidence that the same judge
presided over the previous and subsequent convictions).  Because the judgment
in Cause Number 1045925 renders a sixty-year sentence under that cause number
that Ashall run
consecutively and shall begin only when the judgment and sentence in the
following case has ceased to operate: 1045924,@ and the record
reflects the same judge presided over both convictions, there is no
inconsistency in the judgments.  The trial court did not abuse its discretion
in rendering the sentences to run consecutively.  Nicholas, 56 S.W.3d at
765.  Therefore, we overrule appellant=s tenth issue. 

The trial court=s judgment is affirmed.

 

 

 

/s/      Kem Thompson
Frost

Justice

 

 

Judgment
rendered and Opinion filed May 13, 2008.

Panel consists of
Justices Fowler, Frost, and Seymore.

Publish C Tex. R. App. P. 47.2(b).









[1]  To protect the privacy of the complainant in this
case, we identify her by a pseudonym, ATina.@





[2]  Tina responded affirmatively when the State asked
her if she was specifically talking about her Aprivate part@ as being Awhere
the hole is@ where she goes to the restroom.





[3]  To protect the privacy of the child witness in this
case, we identify her by a pseudonym, AAlice.@





[4]  In two separate issues, appellant challenges the
factual sufficiency of the evidence and contends the trial court erred in
denying his motions for instructed verdicts.  A challenge to the trial court=s denial of a motion for an instructed verdict is, in
effect, a challenge to the legal sufficiency of the evidence.  Williams v.
State, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996).  We review these two
separate issues together.





[5]  The jury also heard Bohannon=s testimony explaining that children of Tina=s age often do not have an accurate perception of time
and that Tina=s imperfect perception of time could be attributed to
her delayed emotional development.  The jury was able to accept or discount
Bohannon=s testimony reasoning why Tina could not accurately
pinpoint dates of the assaults.  See Fuentes, 991 S.W.2d at 271; Sharp, 707 S.W.2d at 614.





[6]  The jury also heard Bohannon=s testimony explaining it is not unusual for
ten-year-old children to not use proper terminology for male and female
genitalia.  Because children use unsophisticated language when describing
sexual acts, the jury may account for this factor when assessing the weight of
children=s testimony.  See Wallace v. State, 52 S.W.3d
231, 235 (Tex. App.CEl Paso 2001, no pet.) (concluding that where children=s lack of sophistication in accurately describing
parts of the body renders evidence legally sufficient to establish guilt, the
same rule should apply in a factual sufficiency review).





[7]  Because we find the trial court properly denied appellant=s motions for instructed verdicts,
we need not reach the merits of appellant=s contention that in denying the instructed verdicts, the
trial court improperly shifted the burden of proof from the State to appellant.






[8]  Accord Caldwell, 477 S.W.2d at 879 (ATo hold that the cross-examination of this prosecutrix
would permit the introduction of an extraneous offense would be tantamount to
holding that such testimony would be admissible in any case where a defendant=s counsel exercises the constitutional right of
cross-examination.  That is not and should not be the law.@); Bass, 222 S.W.3d at 578 (holding that
because the State did not identify any legitimate reason for allowing extraneous-offense
evidence beyond mere fabrication, such extraneous-offense evidence held no
relevance apart from proving appellant=s
character or actions in conformity therewith).





[9]  The facts of Bass are different from those in
the case at hand because the only defensive theory raised at trial in Bass
was fabrication, for which the Bass court determined extraneous-offense
evidence cannot be admitted.  See Bass, 222 S.W.3d at 578; see also
Webb, 36 S.W.3d at 180.  





[10]  In response to appellant=s questions on cross-examination, Tina admitted
appellant hit her, had a temper, and mistreated her to the point that she did
not want to live with appellant anymore.  In appellant=s cross-examination of Tina regarding her alleged
accusations of sexual abuse by AAlex,@ appellant=s
trial counsel justified this line of questioning on that subject by stating, AMy point is, in [Tina=s] mind, she knows that if she makes a sexual abuse claim, she won=t have to go back to that house.@  Appellant elicited similar information from
Kleinpeter on cross-examination by asking several different times whether
Kleinpeter understood that given appellant=s
unpleasant living conditions, Tina Amight
even lie@ or Asay almost
anything@ to avoid returning to his home.