Troy William BROWN, Appellant,

v.

The STATE of Texas, Appellee.

No. C14–87–00642–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

July 21, 1988.

George McCall Secrest, Jr., Houston, for appellant.

John B. Holmes, Jr., Cathleen Herasim-chuk, Houston, for appellee.

Before JUNELL, SEARS and CANNON, JJ.

## OPINION

CANNON, Justice.

This is an appeal from a conviction for indecency with a child. The jury rejected appellant's not guilty plea, and the trial court assessed punishment at ten year's confinement, probated, plus a $1,000 fine. As a condition of probation, the court ordered appellant to serve thirty days in the Harris County Jail. We affirm.

At the time of the offense, the complainant, a six-year-old girl, was living with her mother, Dora Salazar, and the appellant, a

married Houston police officer. They shared a one-bedroom apartment in which the complainant slept in one bed while her mother and appellant shared another bed a few feet away. The complainant testified that appellant had once struck her on the head with a broom handle, and had touched her in her "private places" on one other occasion before the incident in question.

The complainant testified that one night, early in July 1986, she was in her bed when appellant got on the bed and began taking off her clothes. After removing her dress, shorts and t-shirt, appellant took off his own clothes down to his underpants. Appellant then touched the complainant's "private places," while saying "fuk" [sic] and other words which the complainant would not repeat. The complainant testified that this touching felt "ugly" and hurt her. Although she twice told him to stop touching her, appellant did not. Appellant then tried to kiss the complainant on the mouth and make her kiss him "on the place between his legs." The complainant testified that her mother was awake and reading in her bed during this entire incident.

Later that month, the complainant was visiting with her father and her aunt, Dialanda Medellin. She told her aunt about the touching incident. The aunt immediately called Harris County Child Protective Services.

In his first point of error, appellant contends that the trial court erred in permitting the State's expert witness to testify, over appellant's objection, that in his opinion the complainant was telling the truth.

Appellant testified that he never physically or sexually abused the complainant. He stated that although the complainant was usually truthful, she was lying about his behavior on the occasion in question. Dora Salazar testified that her daughter was never alone with appellant in the apartment. She stated that she never saw appellant get into her daughter's bed or fondle the child. Dr. Miriam Flake, a psychologist hired by Dora Salazar, testified that in her opinion the complainant's story was a dream, and the child's allegations were not truthful.

In rebuttal, the State called Dr. Ryan Hart, a clinical psychologist who had interviewed the complainant. Dr. Hart testified that children under the age of seven do not tend to make up sexual abuse allegations because of their lack of knowledge of sexual matters. When the prosecutor asked Dr. Hart if he had reached a conclusion as to whether the complainant was being truthful in her account of what happened, defense counsel made the following objection:

I will object to the nature of that question. If he reached a conclusion as to the existence or nonexistence of sexual abuse in which [the complainant] was involved, perhaps so; but he is now being asked to testify as to the credibility of another witness, which is not the expert's field, and we object to it.

The court overruled this objection. The prosecutor then established that Dr. Hart's training and mandate in the case was to determine the complainant's credibility, and again asked the expert about his opinion as to her credibility. Dr. Hart replied:

Based on the information that was available to me and my interactions with her, I consider it very, very likely that she has been engaged in some sort of sexual activity, probably very much as she has described it, with an adult male.

Appellant's counsel did not object to this testimony.

Dr. Hart also testified as follows:

Q. Your testimony is you are very sure that the account she was giving of sexual abuse or indecency occurred?

A. ... I don't want to come across like there is no question that this happened. It appears very strongly that this has happened, given the evidence.

. . . .

Q. And, again, did you feel in your dealings with [the complainant] as to the allegations of sexual assault that she was being truthful?

A. As best as I could tell.

█ Appellant made no objection to either of these references to the complainant's truthfulness. It is well established

that the improper admission of evidence does not constitute reversible error if the same facts are shown by other evidence that is not challenged. Thus, any error in admitting testimony as to the complainant's credibility was rendered harmless when the same evidence came in elsewhere without objection. *Crocker v. State*, 573 S.W.2d 190, 201 (Tex.Crim.App. [Panel Op.] 1978); *Sapien v. State*, 705 S.W.2d 214, 217 (Tex.App.—Texarkana 1985, pet. ref'd).

Furthermore, even if appellant had objected, the expert's opinion was admissible. The issue of the admissibility of expert testimony in a child sexual abuse case, that either concerns the alleged victim's credibility or that compares behavioral characteristics of the complainant with those of other victims of abuse, was recently addressed by the Dallas Court of Appeals in *Kirkpatrick v. State*, 747 S.W.2d 833 (Tex.App.—Dallas, 1987, no pet.). The court held that the admissibility of expert testimony in child sexual abuse cases is governed by the same rules of evidence that apply to all expert testimony, "notwithstanding the obvious temptation to liberalize those rules given the offensive nature of child molestation." 747 S.W.2d at 834.

■ In a criminal proceeding, expert testimony is admissible when: (1) the witness is competent and qualified to testify; (2) the testimony will be of assistance to the jury; and (3) the testimony will not state a legal conclusion. *Chambers v. State*, 568 S.W.2d 313, 325 (Tex.Crim.App. 1978). Because appellant did not challenge the qualifications of the State's expert witness, our inquiry is limited to whether the expert's testimony helped the jury in reaching its decision.

■ Ordinarily, a witness may not give an opinion as to the truth or falsity of other testimony. The rationale for this rule is that truth or falsity bears directly on a witness' credibility, and the determination of credibility is vested in the exclusive province of the jury. *Black v. State*, 634 S.W.2d 356, 357–58 (Tex.App.—Dallas 1982, no pet.). In a criminal prosecution, the State may not bolster or support its own witnesses unless they have been impeached

on cross-examination. *Farris v. State*, 643 S.W.2d 694, 697 (Tex.Crim.App.1982). However, when defense counsel pursues a subject that would ordinarily be outside the realm of proper comment by the prosecution, this "opens the door" and creates a right of reply by the prosecutor. *Austin v. State*, 712 S.W.2d 591, 595–96 (Tex.App.—Tyler 1986, no pet.).

■ The present case is distinguishable from *Kirkpatrick* and *Farris* in that the State's expert testimony was not offered until after the complainant's own testimony had been impeached. Although the complainant did not change her story on cross examination, defense counsel's questions implied that she had been coached and had lied about the sexual abuse. Several of the defense witnesses testified that the complainant made up the allegations. Because the complainant had undergone cross-examination which tended to undermine her testimony, Dr. Hart's testimony was admissible to rehabilitate the impeached testimony. *Sapien*, 705 S.W.2d at 217.

Appellant's first point of error is overruled.

■ In his second point of error, appellant contends that the prosecutor committed reversible error in his opening statement. Specifically, appellant asserts that the prosecutor's statement, "I expect the evidence to show that [the complainant] told each individual that she spoke to that she was sexually assaulted by having her genitals touched by the defendant in this case," was not supported by any evidence at trial. Because appellant did not objection to this statement, nothing is presented for review. *Marini v. State*, 593 S.W.2d 709, 715 (Tex.Crim.App. [Panel Op.] 1980).

■ Furthermore, even though the State did not present direct evidence to support the prosecutor's opening statement, no error was shown. A preliminary statement of what the State expects to be proved is proper, even if the State does not introduce any supporting evidence. TEX.CODE CRIM.PROC.ANN. art. 36.01(a)(3) (Vernon Supp.1988); *Marini*, 593 S.W.2d at 715.

Appellant's second point of error is overruled.

In his third point of error, appellant contends that the trial court erred in permitting the outcry witness to testify that she was "shocked" by what the complainant told her. Appellant claims that this testimony violated the child outcry hearsay exception, TEX.CODE CRIM. PROC.ANN. art. 38.072 (Vernon Supp. 1988).

Prior to the testimony of Dialanda Medellin, the child's aunt, the prosecutor assured appellant and the court that Medellin would not testify as to the actual statements the complainant made to her. During the direct examination of Medellin, the prosecutor asked her how she had learned of the allegations of sexual abuse. Defense counsel objected on the grounds that the question called for inadmissible hearsay. The court overruled the objection, and the direct examination continued:

> [Prosecutor]: Not as to what you were told, but what did you say to [the complainant] that initiated a conversation? Do you recall?
>
> [Medellin]: I was taking my contacts out. It was late, and we were going to read, and she was playing around with me, and then I just asked her how things were at home.
>
> [Prosecutor]: Without stating what she said to you, did she answer you? Yes or no. Did she give you an answer?
>
> . . . .
>
> [Defense counsel]: I would object to that, your Honor, because it may very well include hearsay, and it calls for the same testimony to which I have objected. It's hearsay.
>
> [Prosecutor]: Your Honor, my question is specifically stating without stating what she said.
>
> [The Court]: That is overruled.
>
> [Prosecutor]: Without stating what was said to you, what was your response? Without stating what she said, what was your emotional reaction to what happened?
>
> [Defense counsel]: We object to the emotional response. That is irrelevant.

> [The Court]: That is overruled.
>
> [Prosecutor]: What was your response to what was said?
>
> [Medellin]: I was shocked.

Appellant argues that although the witness did not testify as to what the complainant told her, the State effectively "telegraphed to the jury in an indirect fashion the substance of the inadmissible statement."

Whatever may have been "telegraphed" to the jury, it did not violate article 38.072. The present case is similar to *Turner v. State*, 721 S.W.2d 909, 911 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd untimely filed). In *Turner*, the outcry witness testified that after the child victim told her what had happened, the witness then telephoned the police. The court held that article 38.072 applies only to statements that describe the alleged offense; any other testimony does not violate the statute. 721 S.W.2d at 911.

Even if the complainant's aunt had repeated the child's statement, it would not have been error. The notice and hearing requirements of article 38.072 are designed to prevent surprise to appellant's counsel. The complainant had testified without objection that she told her aunt about the sexual abuse. Because there is no evidence in the record that appellant's attorney was surprised by the aunt's testimony, there was no prejudice to appellant's case by admission of that testimony. *See Hupp v. State*, 729 S.W.2d 355, 358 (Tex.App.—Dallas 1987, pet. granted). Appellant's third point of error is overruled.

Appellant's fourth point of error contends that the prosecutor made improper statements during final argument, specifically, the prosecutor's statement that the complainant's mother:

> "[M]ade a cold and calloused decision to choose this defendant over her daughter. No matter how you cut it, that it what she decided. . . . Doesn't common sense tell you that what has been testified to or what has been suggested is true, that she wanted to exchange the love and affection and the opportunity to care for her daughter for this defendant?"

[Defense counsel]: We object to that. That is not in the record and is merely a suggestion of counsel. It's outside the record. We object to it and ask the court to instruct the jury to disregard it.

[The Court]: That is overruled.

 The purpose of closing argument is to facilitate the jury in properly analyzing the evidence presented at trial so that it may reach a just and reasonable conclusion based on the evidence alone, and not on facts not admitted in evidence. The prosecutor should not attempt to arouse the passion or prejudice of the jury with matters not properly before them. *Campbell v. State*, 610 S.W.2d 754, 756 (Tex.Crim. App. [Panel Op.] 1980). Permissible jury argument must fall within one of four general areas: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answers to arguments of opposing counsel; and (4) pleas for law enforcement. *Alibar v. State*, 739 S.W.2d 360, 362 (Tex.Crim.App.1987); *Todd v. State*, 598 S.W.2d 286, 296–97 (Tex.Crim.App.1980). An argument that exceeds the permissible bounds is not reversible error unless, in light of the record as a whole, the argument is extreme, manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding. *McKay v. State*, 707 S.W. 2d 23, 26 (Tex.Crim.App.1985).

In examining challenges to jury argument, the remark will be considered in the context in which it appears. Counsel is given wide latitude without limitation in drawing inferences from the evidence so long as they are reasonable, fair, legitimate, and offered in good faith. *Denison v. State*, 651 S.W.2d 754, 761–62 (Tex.Crim. App.1983).

In the present case, the evidence showed that Dora Salazar had offered to relinquish all parental rights to her daughter. The evidence further showed that at the time of the trial, Salazar was still living with appellant. The family court had changed her visitation rights to prevent her daughter from staying overnight in the apartment that Salazar and appellant shared. Salazar had neither visited her daughter nor tried to contact her in any way for at least three weeks before the trial. Futhermore, the complainant testified that her mother was present when appellant sexually abused her, and did and said nothing.

This evidence raises a reasonable inference that Salazar made a conscious decision to choose appellant over her daughter. Despite her testimony that she "wasn't making deals with my daughter," Salazar had at least considered relinquishing her parental rights. The prosecutor's remark was a reasonable deduction from this evidence.

Even if the argument was improper, it did not constitute reversible error. *McKay*, 707 S.W.2d at 36. Appellant's fourth point of error is overruled.

The judgment of the trial court is affirmed.