**Affirmed and Memorandum Opinion filed October 13, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-13-00708-CR

**VICTOR TODD WILLIAMS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 339th District Court
Harris County, Texas
Trial Court Cause No. 1386052**

## M E M O R A N D U M   O P I N I O N

Appellant Victor Todd Williams challenges his conviction for aggravated robbery on the following grounds: (1) the evidence is insufficient to support his conviction; (2) appellant's trial counsel was ineffective; (3) the trial court erred in charging the jury; (4) the State made improper opening and closing arguments; and (5) the trial court erred in failing to grant a hearing on appellant's motion for new trial. We affirm.

# I. BACKGROUND

The decedent Justin Thompson and appellant's co-defendant Felix Lugo attended a party with some of their friends from high school in October 2010. Appellant and co-defendant Javis McQueen attended the same party. At the party, Thompson and Lugo approached McQueen, from whom they had previously purchased marijuana, and told McQueen that they were planning to rob Tellie Simmons. Thompson had previously purchased marijuana from Simmons, who sold hydroponic marijuana and would be easy to rob "because she a lady and she be by herself [sic]" at a house near Thompson's home in Houston. McQueen agreed to provide transportation for the planned robbery.

The next morning, McQueen called appellant and told him about the planned robbery, asked if appellant wanted to participate, and requested that appellant bring weapons; Thompson had told McQueen that the robbery would probably "go smoother and quicker if [they] could just show [Simmons] some weapons to intimidate her, to scare her." Appellant agreed to participate in the robbery and told McQueen that he would bring a rifle. McQueen borrowed a shotgun from his neighbor, picked up appellant, and met with the other two participants, Thompson and Lugo, at Thompson's house. Appellant and McQueen showed Thompson and Lugo the rifle and shotgun, and the group finalized their plan for the robbery. McQueen drove the group to Simmons's house in McQueen's Buick.

When they arrived, Lugo and Thompson walked to the back door of Simmons's house while appellant and McQueen waited by the car. Simmons let Lugo and Thompson into the house, led them to the living room, and showed them bags of marijuana while they discussed the sale. About five minutes later, McQueen—armed with the shotgun—and appellant—armed with the rifle— walked around to the back door of Simmons's house. According to the plan, the

2

two were to run into the house and display their guns while Lugo and Thompson grabbed the marijuana.

McQueen ran into the house through the back door and held the shotgun where Simmons could see it. Lugo and Thompson shoved Simmons aside and "started grabbing stuff." Shots were fired from outside the house; McQueen, Lugo, and Thompson ran out of the house. McQueen and Lugo made it back to the Buick unhurt, but Thompson was struck by a bullet in his upper left shoulder as he fled the house. Simmons was also struck by a bullet and severely injured. Appellant was waiting by the Buick with his rifle in hand. Thompson fell as he was running out of Simmons's house; Lugo ran back and dragged him to the car where McQueen helped load him into the back seat of the car. McQueen and Lugo got into the front and back passenger's side seats of the car, and appellant drove the car away from the scene. Appellant drove the Buick back to Thompson's house and then helped McQueen and Lugo transfer Thompson from the Buick to Lugo's car. McQueen and appellant left in the Buick while Lugo drove Thompson to the nearest hospital.

Thompson could not be revived by medical personnel at the hospital and was pronounced dead. Houston Police Department (HPD) officers arrived at the hospital and questioned Lugo about the shooting. After first trying to explain Thompson's death as a shooting that occurred near Thompson's home, Lugo eventually confessed his, Thompson's, McQueen's, and appellant's roles in the aggravated robbery gone wrong. Lugo only knew appellant by the nickname "Vic." HPD officers obtained statements about the crime from Simmons; Kenneth Cooper, a friend of Thompson's and Lugo's who had overheard the co-defendants planning the robbery; and a neighbor of Simmons, who had heard the gunfire and was able to take photographs of appellant and his co-defendants before they fled

3

the scene. HPD officers learned appellant's name by cross-referencing an anonymous Crime Stoppers tip with information in a police database. HPD officers obtained arrest warrants for McQueen, Lugo, and appellant.

Appellant was charged with felony murder; McQueen and Lugo were charged with aggravated robbery. At appellant's trial, McQueen and Lugo testified against him. Simmons, Cooper, and the neighbor who took the photographs at the scene also testified, as did several police officers, an assistant medical examiner, and a firearms expert. After hearing the evidence, a jury convicted appellant of the lesser-included offense of aggravated robbery. After appellant pleaded "true" to several prior aggravated assaults with a deadly weapon, the trial court sentenced him to seventy-five years' confinement in the Institutional Division, Texas Department of Criminal Justice. This appeal timely followed.[1]

## II.   SUFFICIENCY OF THE EVIDENCE

In two issues, appellant challenges the sufficiency of the evidence to support his conviction, as well as the sufficiency of the evidence supporting the accomplice witnesses' testimony. We address appellant's second issue first, considering the evidence tending to connect appellant to the offense. We then address appellant's first issue, his challenge to the sufficiency of the evidence to support his conviction.

### A. Corroboration of Accomplice Witness Testimony

"Under Article 38.14 of the Texas Code of Criminal Procedure, a defendant may not be convicted of an offense upon the testimony of an accomplice without

---

[1] Appellant's trial counsel, Jerome Godinich, continued to represent appellant on appeal. Godinich filed an *Anders* brief, asserting that there were no arguable issues for appeal. *See generally Anders v. California*, 386 U.S. 738 (1967). This court disagreed with Godinich's *Anders* brief and ordered appellant's appeal abated for the appointment of new appellate counsel. After new counsel was appointed, this appeal was reinstated.

4

other corroborating evidence 'tending to connect' the defendant to the offense." *Simmons v. State*, 282 S.W.3d 504, 505 (Tex. Crim. App. 2009).[2] To determine whether non-accomplice evidence tends to connect a defendant to the offense, "'the evidence must simply link the accused in some way to the commission of the crime and show that rational jurors could conclude that this evidence sufficiently tended to connect [the accused] to the offense.'" *Id.* at 508 (quoting *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008)). We eliminate the accomplice testimony from consideration and consider only the non-accomplice evidence. *See Malone*, 253 S.W.3d at 257. We must consider the combined force of all the non-accomplice evidence. *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011).

A defendant's mere presence at the crime scene is insufficient to corroborate accomplice testimony. *Malone*, 253 S.W.3d at 257. However, "'[p]roof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction.'" *Id.* (quoting *Brown v. State*, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984)). The corroborating evidence, of course, "need not prove the defendant's guilt beyond a reasonable doubt by itself." *Id.*

Here, disregarding Lugo's and McQueen's testimony as that of accomplices as a matter of law, the record contains sufficient non-accomplice evidence tending to connect appellant to the aggravated robbery. First, non-accomplice Cooper testified that he was at Thompson's house shortly before the aggravated robbery

---

[2] *See also* Tex. Code Crim. Proc. Ann. art. 38.14 ("A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.").

occurred. He explained that he was playing video games and overheard Lugo and Thompson discussing robbing Simmons of her hydroponic marijuana. Cooper stated that, shortly thereafter, McQueen and appellant—whom Cooper did not know[3]—arrived at Thompson's house and came inside, bringing a shotgun and assault rifle with them. Cooper testified that he believed the shotgun was not loaded because McQueen was looking for shells for it, but he was "pretty sure" the rifle was loaded because it "had a clip in it" and no one was looking for ammunition for it. Cooper stated that he overheard appellant, McQueen, Thompson, and Lugo continue to discuss their plan to rob Simmons and that all four co-defendants departed Thompson's house in McQueen's Buick. Cooper also testified that, about an hour later, the four co-defendants returned to Thompson's house and "were panicking, like something had happened." Cooper explained that appellant, McQueen, and Lugo briefly ran into Thompson's house to weigh the stolen marijuana, while Cooper went outside and saw Thompson's body lying in the back seat of McQueen's Buick. Cooper described watching appellant, McQueen, and Lugo move Thompson's body from the back seat of McQueen's car into Lugo's car. He also saw appellant and McQueen getting back into the Buick and driving away. Cooper's testimony provides ample "suspicious circumstances" tending to connect appellant to the offense. *See, e.g.*, *Simmons*, 282 S.W.3d at 509–10 (describing various suspicious circumstances tending to connect the appellant with the offense).

Second, both photographic and testimonial proof showed that appellant was at or near the scene of the crime at or about the time of its commission: Simmons and her neighbor testified that they saw appellant at Simmons's house immediately after the incident and that he was holding a "long gun." Additionally, the pictures

---

[3] Cooper identified appellant in a pre-trial photo array and at trial.

6

taken by Simmons's neighbor were admitted into evidence and chronicled the events immediately following the incident; appellant is clearly depicted holding what appears to be a rifle near the Buick in several of the shots. *Cf. Johnson v. State*, 354 S.W.3d 491, 494–95 (Tex. App.—San Antonio 2011, pet. ref'd) (surveillance photographs were sufficient independent evidence tending to connect defendant to robbery because jury was able to compare defendant's features with those of gunman depicted in photographs). Thus, appellant was placed at or near the scene of the crime about the time of its commission, coupled with the "suspicious circumstance" of holding what appears to be a rifle. *See Simmons*, 282 S.W.3d at 509; *see also Lacaze v. State*, 346 S.W.3d 113, 117–18 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (corroborating evidence tending to connect appellant with offense included non-accomplice witness's testimony placing appellant with accomplice-witness inside the victim's home on the day of the murder).

Based the foregoing, a rational jury could have concluded that the non-accomplice evidence "tends to connect" appellant to the offense. *See Simmons*, 282 S.W.3d at 508. We overrule appellant's second issue and turn to his challenge to the legal sufficiency of the evidence to support his conviction.

**B. Legal Sufficiency**

In his first issue, appellant asserts that the evidence is insufficient to support his conviction for aggravated robbery.[4] Here, appellant was charged as both a

---

[4] A person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. Tex. Penal Code Ann. § 29.02(a)(2). A person commits theft if he unlawfully appropriates property with intent to deprive the owner of it. *Id.* § 31.03(a). Appropriation is unlawful if it is without the owner's effective consent. *Id.* § 31.03(b)(1). A person commits aggravated robbery if he uses or exhibits a deadly weapon during the

principle actor and a party to the offense. Because we conclude that there is legally sufficient evidence to support a jury finding that appellant was a party to this offense, we focus our analysis on his party responsibility.

A person is a criminally responsible party to an offense "if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." Tex. Penal Code Ann. § 7.01. A person is criminally responsible for the conduct of another if, acting "with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02. To determine whether an individual is a party to an offense, the reviewing court may look to events before, during, and after the commission of the offense. *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012). There must be sufficient evidence of an understanding and common design to commit the offense. *Id.* Evidence may be direct or circumstantial. *See id.* Each fact need not point directly to the guilt of the defendant, as long as the cumulative effect of the facts are sufficient to support the conviction under the law of parties. *Id.* However, the mere presence of a person at the scene of a crime, or even flight therefrom, without more, is insufficient to support a conviction as a party to the offense. *Id.*

We must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* The jury is the exclusive judge of the credibility of witnesses and the weight to be given to the evidence. *See Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Further, we defer to the jury's responsibility to fairly resolve or reconcile conflicts in the evidence. *Id.* We

---

commission of a robbery. *Id.* § 29.03(a)(2). Finally, a firearm is per se a deadly weapon. *Id.* § 1.07(a)(17)(A).

draw all reasonable inferences from the evidence in favor of the verdict. *Id.* This standard applies to both circumstantial and direct evidence. *Id.*

Here, accomplices Lugo and McQueen testified in detail regarding appellant's involvement in the aggravated robbery of Simmons.[5] They both testified that appellant brought a rifle to Thompson's house before the commission of the offense and was aware and involved in the planning of the robbery. Lugo and McQueen placed appellant at the scene with a rifle when the offense occurred, although neither saw him fire the weapon. A firearms expert confirmed that the ballistic evidence recovered from the crime scene and Thompson's body were consistent with bullets or fragments fired from rifle.

Including the non-accomplice evidence discussed above in section II.A, there is ample evidence from which a rational jury could find that appellant is criminally responsible for the conduct of another because he intentionally acted to promote or assist in the commission of the aggravated robbery and he solicited, encouraged, aided or attempted to aid the other actors in committing this aggravated robbery. *See* Tex. Penal Code Ann. § 7.02; *see also Williams v. State*, —S.W.3d—, 2014 WL 6677886, at *5–7 (Tex. App.—Houston [14th Dist.] Nov. 25, 2014, pet. ref'd). In other words, there is legally sufficient evidence from which a jury could find that appellant was a party to the aggravated robbery of Simmons.

For the foregoing reasons, we overrule appellant's first issue.

---

[5] Accomplice witness testimony can be sufficient to support a conviction under the *Jackson* legal sufficiency standard. *Taylor v. State*, 10 S.W.3d 673, 684–85 (Tex. Crim. App. 2000).

### III.  INEFFECTIVE ASSISTANCE OF COUNSEL

In issue three, appellant asserts that his trial counsel, Jerome Godinich, was ineffective in numerous respects, including making improper remarks during opening statement and closing argument; failing to object during the State's opening statement, to various testimony and expert witnesses, to the court's charge, and during the State's closing argument; and failing to seek an instruction to disregard and move for a mistrial following the sustaining of some of counsel's objections.  We first review the legal principles related to ineffective assistance claims.  Then we address appellant's multiple complaints about his trial counsel's performance, ultimately determining that appellant failed to establish that he received ineffective assistance of counsel.

## A. General Principles

To prevail on an ineffective assistance claim, an appellant must show that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness; and (2) counsel's deficiency caused the appellant prejudice— there is a probability sufficient to undermine confidence in the outcome that but for counsel's errors, the result of the proceeding would have been different.  *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *Perez v. State*, 310 S.W.3d 890, 892–93 (Tex. Crim. App. 2010).  An appellant must satisfy both prongs by a preponderance of the evidence; failure to demonstrate either deficient performance or prejudice will defeat a claim of ineffectiveness.  *Perez*, 310 S.W.3d at 893. When one of the prongs is dispositive, we need address only that prong on appeal. *Washington v. State*, 417 S.W.3d 713, 724–25 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

Although an appellant may claim ineffective assistance of counsel for the first time on direct appeal, as here, the record in such a case often will not be

sufficient to overcome the presumption that counsel's conduct was reasonable and professional. *Cannon v. State*, 252 S.W.3d 342, 349 (Tex. Crim. App. 2008). In the face of a silent record, we will not find deficient performance unless counsel's conduct is so outrageous that no competent attorney would have engaged in it. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). In assessing whether counsel rendered effective assistance, we must review the totality of the representation and the circumstances of each case without the benefit of hindsight. *Lopez v. State,* 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). Although a single error will not typically result in a finding of ineffective assistance, an egregious error may satisfy the *Strickland* standard on its own. *Id.*

## B. Improperly "Confessing" Appellant's Guilt of Aggravated Robbery

Appellant first asserts that his counsel was deficient by "confessing" his guilt of aggravated robbery as a party during opening statement. During opening statement, appellant's counsel stated, "My client, who was acting as the lookout, didn't have the time or the ability to grab any kind of gun except after he got it from Felix Lugo." Appellant further contends that his counsel was deficient because, during closing argument, he pleaded with the jury to find appellant guilty only of the lesser-included offense of aggravated robbery, rather than the charged offense of felony murder.

Attempting to persuade the jury to convict the defendant of a lesser-included offense can be considered reasonable trial strategy. *See Hathorn v. State*, 848 S.W.2d 101, 118 (Tex. Crim. App. 1992); *Jordan v. State*, 859 S.W.2d 418, 421–22 (Tex. App.—Houston [1st Dist.] 1993, no pet.) ("It is also logical to conclude that trial counsel, faced with overwhelming evidence of appellant's guilt, chose to placate the jurors rather than to possibly antagonize them with an impassioned, though weakly supported, plea for a verdict of not guilty."). Although appellant

11

had already elected to have the court, rather than the jury, decide his punishment, an attempt to mitigate punishment by being open and honest with the court in light of the considerable evidence of appellant's guilt could have been a realistic trial strategy. *Cf. Jordan*, 859 S.W.2d at 421–22; *see also Flemming v. State*, 949 S.W.2d 876, 881 (Tex. App.—Houston [14th Dist.] 1997, no pet.).

Because there is nothing to suggest that appellant's counsel was not pursuing a plausible trial strategy by admitting appellant's guilt to the lesser-included offense here in an effort to mitigate punishment, his counsel was not deficient for doing so.

## C. Failure to Object

Appellant next asserts that his trial counsel was deficient for failing to object to the following:

1) the State's improper opening statement that appellant had a loaded "AK-47" or that an accomplice saw appellant firing the gun into the house;

2) the testimony of an HPD officer that Lugo began to be truthful after he started crying during an interview;

3) the testimony of an HPD officer regarding bullets, trajectories, and caliber of bullets found, even though this witness testified he was not a ballistics expert;

4) the State's mischaracterization of the weapon allegedly held by appellant as an "AK-47";

5) a confrontation clause violation regarding the testimony of an assistant medical examiner "on behalf of" the assistant medical examiner who performed the autopsy;

12

6) the testimony of an assistant medical examiner that a "high velocity" weapon caused Thompson's death, despite this witness's admission that he was not a ballistics expert;

7) the testimony of a firearms examiner who testified on the basis of the report of an unnamed examiner on confrontation clause grounds;[6]

8) the testimony of Thompson's grandmother about his good character;

9) the prosecutor's closing argument that counsel was trying to trick the jury "like a magician"; and

10) the prosecutor's closing argument that the bullet found in Thompson was from an "AK-47," even though the expert said it was consistent with at least eight other types of firearms.

First, many of these alleged deficiencies are relevant to the felony murder charge—of which appellant was acquitted—rather than the lesser-included offense of aggravated robbery of which appellant was found guilty. Specifically, the testimony or argument regarding the cause of Thompson's death or the good character testimony regarding Thompson likely had little impact on the jury's verdict because the jury convicted appellant of aggravated robbery rather than felony murder. Second, the record in this case is silent as to why appellant's trial counsel failed to object. Thus, appellant has failed to rebut the presumption that these decisions were reasonable. *See Thompson*, 9 S.W.3d at 814.

Finally, even assuming all of these failures to object by appellant's trial counsel amounted to deficient performance, appellant still bears the burden of

---

[6] As to counsel's failure to object to the firearms expert's testimony on confrontation clause grounds, we note that the only report offered into evidence and discussed by the expert was that expert's own report, not a report by any other expert. Thus, the confrontation clause was not implicated during this expert's testimony, and appellant's trial counsel was not deficient for failing to object on this basis.

establishing prejudice from these alleged errors. *Thompson*, 9 S.W.3d at 812. A defendant establishes prejudice when he proves that there is a reasonable probability that the result of the proceeding would have been different had counsel's performance been proficient and thus, he was deprived of a fair trial. *Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the proceeding. *Strickland*, 466 U.S. at 694; *Cox v. State*, 389 S.W.3d 817, 819 (Tex. Crim. App. 2012). We must consider the totality of the evidence when evaluating whether the defendant was prejudiced by his counsel's deficient performance, given that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 695; *see Frangias v. State*, 413 S.W.3d 212, 218 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (op. on reh'g).

In the "Argument and Authorities" section following each of these alleged deficiencies, appellant focuses only on how his counsel's failure to object amounted to deficient performance; he fails to identify how such deficient performance prejudiced him. The only argument concerning prejudice is presented after appellant urges all of his numerous ineffective assistance complaints, where he asserts in a conclusory fashion, "The cumulative effect of Mr. Godinich's errors undermined any hope of a fair trial and warrants reversal."[7] Thus, appellant has not applied any governing legal principles to the facts of this case to prove prejudice from his counsel's conduct. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate

---

[7] Appellant repeatedly recites the standard of review for ineffective assistance of counsel claims, including the standard for determining prejudice. But he fails to tie the standard of review for prejudice to any objective facts in the record to support his claim of prejudice. *See Bone v. State*, 77 S.W.3d 828, 837 (Tex. Crim. App. 2002).

citations to authorities and to the record."). It is not enough for an appellant to show that the errors, if any, had some conceivable effect on the outcome of the proceeding. *Strickland*, 466 U.S. at 687; *Ex parte Varelas*, 45 S.W.3d 627, 629 (Tex. Crim. App. 2001). Instead, this stringent burden requires that appellant point to objective facts in the record to support any lack of confidence in the conviction, i.e., proof of prejudice. *Bone v. State*, 77 S.W.3d 828, 837 (Tex. Crim. App. 2002). Appellant has failed in his burden to establish prejudice.

In sum, based on (a) the ample evidence of appellant's guilt as a party to the offense of aggravated robbery, discussed above, (b) the silent record regarding trial counsel's reasons for failing to object, and (c) appellant's failure to point to objective facts in the record to support any prejudice, we conclude that appellant has not established that his counsel's failures to object in the above instances amounted to ineffective assistance of counsel. *See id.*; *Thompson*, 9 S.W.3d at 812.

## D. Failure to Seek an Instruction to Disregard and Mistrial on Sustained Objections

Appellant cites two examples of sustained objections to evidence offered by the State: (1) the assistant medical examiner's testimony regarding the type of "high velocity" weapon that struck Thompson, and (2) testimony by Goodman that it "appeared" to him that appellant, Thompson, Lugo, and McQueen "had an agreement to go rob somebody." Although appellant objected to this testimony, he failed to seek an instruction to disregard or a mistrial. Appellant claims that this failure to go further than simply objecting to this testimony resulted in deficient performance.

But as discussed above, appellant has failed to point to any objective facts in the record to support a lack of confidence in the conviction. Indeed, as described

above, there was ample evidence of appellant's guilt as a party to the aggravated robbery. Thus, even if his counsel erred by failing to (a) request an instruction to disregard or (b) seek a mistrial in these two isolated incidences, there is nothing to show that appellant was prejudiced by such failure. Appellant's ineffective assistance claim fails on the second prong of *Strickland*.

For the foregoing reasons, we overrule appellant's fourth issue in its entirety.

## IV. CHARGE ERROR

In his fourth issue, appellant complains that the trial court erred by submitting an improper jury charge that permitted the jury to convict appellant of aggravated robbery on accomplice-witness testimony only. Appellant urges that the trial court erred in the jury charge because the accomplice-witness instructions applied only to the offense of felony murder, not to the lesser-included offense of aggravated robbery. We disagree.

### A. Standard of Review and Applicable Law

We review alleged charge error by considering two questions: (1) whether error existed in the charge; and (2) whether sufficient harm resulted from the error to compel reversal. *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005). The degree of harm necessary for reversal under the second inquiry depends on whether the appellant preserved the error. *Id.* at 743. If the appellant objected to the charge, we will reverse if there is "some harm." *Id.* If, as here, the appellant failed to object, we will reverse only if there is "egregious harm." *Id.* at 743–44.

Errors that meet the "high and difficult standard"[8] of causing egregious harm are those that "affect the very basis of the case, deprive the defendant of a valuable right, or vitally affect a defensive theory." *Ngo*, 175 S.W.3d at 750 (quotations

---

[8] *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

16

omitted). The some harm standard is less stringent and asks whether the error was "calculated to injure the rights of the defendant." *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013) (quotation omitted). But under either harm analysis, the appellant must have suffered some actual, rather than merely theoretical, harm. *See id.* In assessing harm, we must consider the entire record, including "(1) the jury charge as a whole, (2) the arguments of counsel, (3) the entirety of the evidence, and (4) other relevant factors present in the record." *Id.*

Finally, article 38.14 of the Code of Criminal Procedure provides that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." Tex. Code Crim. Proc. Ann. art. 38.14. Based on this rule, the trial court must instruct the jury on the law regarding accomplice-witness corroboration whenever such issues arise in a case. *Zamora v. State*, 411 S.W.3d 504, 510 (Tex. Crim. App. 2013). When a witness is an accomplice as a matter of law because the witness has been charged with the same offense as the defendant or with a lesser-included offense, the trial court's accomplice-witness jury instructions must (1) inform the jury of that fact, (2) explain the definition of an accomplice, and (3) convey the statutory accomplice-witness corroboration requirement. *See id.*; *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007).

**B. No Error in the Charge**

Here, in the jury charge, the trial court defined felony murder and the lesser-included offense of aggravated robbery, provided definitions on party liability and criminal responsibility, and then provided application paragraphs for felony murder and aggravated robbery, including party liability for each charge. The trial

17

court next defined an accomplice, reiterated the party liability and criminal responsibility definitions, and instructed the jury as follows:

> You are instructed that a conviction cannot be had upon the testimony of an accomplice unless the accomplice's testimony is corroborated by other evidence tending to connect the defendant with the offense charged, and the corroboration is not sufficient if it merely shows the commission of the offense, but it must tend to connect the defendant with its commission.
>
> The witnesses, Javis McQueen and Felix Lugo, are accomplices, if an offense was committed, and you cannot convict the defendant upon their testimony unless you further believe that there is other evidence in this case, outside of the testimony of Javis McQueen and/or Felix Lugo tending to connect the defendant with the offense committed, and the corroboration is not sufficient if it merely shows the commission of the offense, but it must tend to connect the defendant with the commission, and then from all the evidence you must believe that the defendant is guilty of the offense charged against him.
>
> You are further instructed that one or more accomplices cannot corroborate each other; but such corroborative evidence, if any, must be from some other source than said accomplices, Javis McQueen and Felix Lugo, or either of them, as hereinabove charged.

Appellant complains that the accomplice-witness instructions "only applied to the crime 'as charged,' Felony Murder," and that "the accomplice language should have been included in the Aggravated Robbery" instructions. But contrary to appellant's position, the trial court's accomplice-witness instructions were general in nature and not tailored to any particular offense. Further, this portion of the instructions came after the abstract and application paragraphs for both felony murder and aggravated robbery. Thus, a rational juror contemplating the jury charge in its entirety would understand that the accomplice-witness instructions applied to both the offense of felony murder and aggravated robbery. *See Barrios v. State*, 283 S.W.3d 347, 352–53 (Tex. Crim. App. 2009) (jurors "may consider the evidence in light of the entire charge read as a whole" (internal quotation

18

omitted)); *see also Holladay v. State*, 709 S.W.2d 194, 201–02 (Tex. Crim. App. 1986) (en banc). Accordingly, the trial court's jury charge does not contain an erroneous instruction on accomplice witness corroboration. *See Zamora*, 411 S.W.3d at 510; *Druery*, 225 S.W.3d at 498.

Appellant's fourth issue lacks merit and is overruled

## V. PRESERVATION

In his fifth issue, appellant asserts that the "State erred by making an opening statement containing material falsehoods that it must have known it could not prove at trial." Specifically, appellant asserts that the State falsely stated during its opening remarks that witnesses saw appellant firing his rifle towards Simmons's house and that appellant had an AK-47 rifle. In issue six, appellant urges that the prosecutor improperly argued during closing that defense counsel was trying to trick the jury "like a magician," and that the bullet found in Thompson was "from an AK-47." Appellant did not object to any of these asserted errors. To preserve error for appellate review, a defendant must (1) present to the trial court a timely request, objection, or motion clearly stating the specific factual and legal basis for the ruling the defendant seeks and (2) fully pursue the matter by either obtaining a ruling from the trial court or objecting to the trial court's refusal to rule. *See* Tex. R. App. P. 33.1(a).

Regarding the misstatements in the State's opening statement, appellant was required to object or move for a mistrial when these misstatements later became apparent. *See Peake v. State*, 792 S.W.2d 456, 459 (Tex. Crim. App. 1990) (defendant failed to preserve error regarding prosecutor's erroneous opening statement referencing evidence that was later ruled inadmissible because defendant failed to object or move for mistrial on that basis when such error became apparent). Appellant neither objected nor moved for a mistrial when it became

19

apparent that none of the witnesses could or would testify that they actually saw appellant shoot his rifle or when appellant's co-defendants testified that appellant's rifle appeared to be an SKS rather than an AK-47. Thus, appellant's complaints about inaccuracies during the State's opening statements present nothing for our review because appellant failed to preserve error. *See id.*; *see also* Tex. R. App. P. 33.1(a); *Brown v. State*, 756 S.W.2d 793, 796 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd) (defendant failed to object to prosecutor's opening statement and thus failed to preserve error regarding them).

Similarly, appellant's failure to object to the State's closing argument waives his complaints about the State's closing. *See* Tex. R. App. P. 33.1(a); *Threadgill v. State*, 146 S.W.3d 654, 667 (Tex. Crim. App. 2004) (defendant waived issue that State's closing argument struck at defendant over defense counsel's shoulders because defendant failed to object to prosecutor's argument); *Drew v. State*, 76 S.W.3d 436, 462 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (defendant waived contention that State's closing argument injected new facts outside the record because defendant failed to object on that specific basis).

Appellant's fifth and sixth issues are overruled.

## VI.    MOTION FOR NEW TRIAL

In his seventh issue, appellant argues that the trial court erred in refusing to hold a hearing on the merits of appellant's motion for new trial. As noted above, appellant's initial appellate counsel filed an *Anders* brief, with which this court disagreed; we abated this case for the appointment of new appellate counsel. After new appellate counsel had been appointed, a motion for new trial was filed. Although this motion for new trial was filed over a year after appellant's sentence

was imposed,[9] appellant insists it was timely because this court "restarted" the appellate timetable when we abated appellant's case. We disagree.

Here, the trial court imposed appellant's sentence on July 29, 2013. Appellant's present appellate counsel filed a motion for new trial on appellant's behalf on November 10, 2014—well over a year after the trial court imposed appellant's sentence in open court and well past the 30-day deadline for timely filing a motion for new trial. *See* Tex. R. App. P. 21.4(a). Because appellant's motion for new trial was untimely filed, the trial court lacked jurisdiction to consider it unless our abatement order reset the appellate timetable.

Our abatement order did not restart the appellate timetable because it contained no language or directions to that effect. *Cf. Ward v. State*, 740 S.W.2d 794, 800 (Tex. Crim. App. 1987) (ordering that the appeal be abated and the appellate timetable be reset on finding that defendant was deficiently represented during the timeframe for filing a designation of the record); *Bearman v. State*, 425 S.W.3d 328, 332 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (explicitly ordering that proceedings be abated and the appellate timetable be restarted upon concluding that the defendant was not adequately represented by counsel during the entire period for filing a motion for new trial). Instead, our abatement order instructed the trial court to appoint alternate appellate counsel in this case and to have a supplemental clerk's record made and filed with this court to reflect that appointment.

---

[9] To be entitled to a hearing on a motion for new trial, a defendant first must have timely filed the motion no later than thirty days after the date when the trial court imposed or suspended the defendant's sentence in open court. Tex. R. App. P. 21.4(a). If the defendant's motion for new trial is untimely filed, the trial court lacks jurisdiction to consider it. *Drew v. State*, 743 S.W.2d 207, 222–23 (Tex. Crim. App. 1987). Second, the defendant must timely and actually present his motion for new trial to the trial court within ten days of filing the motion, and the defendant must also request that the court hold a hearing. Tex. R. App. P. 21.6; *Stokes v. State*, 277 S.W.3d 20, 21 (Tex. Crim. App. 2009).

Further, there is nothing in our record to suggest that appellant was without counsel during the critical time period for filing a motion for new trial. *See, e.g.*, *Smith v. State*, 17 S.W.3d 660, 662–63 (Tex. Crim. App. 2000). To the contrary, when trial counsel does not withdraw and is not replaced by new counsel after sentencing, a rebuttable presumption exists that trial counsel continued to represent the defendant during the time for filing a motion for new trial. *See id.* at 662. Here, appellant's notice of appeal, filed on August 2, 2013, only days after the judgment of conviction was signed and entered on July 29, indicates that his trial counsel "will CONTINUE to represent the defendant on appeal." That same date, his counsel sought a free record based on appellant's indigent status. Also on August 2, his counsel affirmed that he "will be solely responsible for writing a brief and representing the appellant on appeal." Thus, there is nothing in the record to suggest that appellant was not counseled by his attorney regarding the merits of a motion for new trial, and we assume that appellant considered this option and rejected it. *See, e.g.*, *id.*

Under these circumstances, appellant's seventh issue is overruled.

## VII. CONCLUSION

Having overruled all of appellant's issues, we affirm the trial court's judgment.

/s/ Sharon McCally
Justice

Panel consists of Justices Jamison, McCally, and Wise.
Do Not Publish — Tex. R. App. P. 47.2(b).